[Civ. No. 47787. Second Dist., Div. One. Oct. 28, 1976.]

A. J. VAN RIESSEN et al., Plaintiffs and Appellants, v.
CITY OF SANTA MONICA et al., Defendants and Respondents.

Counsel

William T. Hays, Seth J. Kelsey and Hays & Petersen for Plaintiffs and Appellants.

Richard L. Knickerbocker, City Attorney, and Carole Heller Solomon, Deputy City Attorney, for Defendants and Respondents.

Opinion

HANSON, J.—

### Introduction

Petitioners [appellants] nine firemen retired from the City of Santa Monica Fire Department (hereinafter petitioners) appeal from the judgment denying their petition for writ of mandate seeking to compel respondent City of Santa Monica (hereinafter CITY) and certain of its officers to make monetary payment to each of them for unused sick leave days which had been accumulated prior to retirement.

### The Case

Each of the petitioners is a retired fireman of respondent CITY. They claim that an aggregate of 3,100 days of sick leave had accrued but was unused by them as of retirement and it is for these days that their petition sought monetary payment.

Petitioners' claims are controlled by Santa Monica Municipal Code, section 2104I, as it existed before and following the amendment of February 23, 1971 (retroactive in part to July 1, 1970), and the December 1968 memorandum of understanding and the October 1973 memorandum of understanding between the CITY and the Santa Monica Fire Fighters Local 1109.[1]

Santa Monica Municipal Code, section 2104I, at all relevant times, pertained to sick leave of city employees. Prior to the amendment of February 23, 1971, its most relevant provision was subsection 4,

---

[1]Technically, the 1973 memorandum of understanding would not concern petitioner Lillard since he retired July 3, 1971, or petitioner Forbes since he retired August 31, 1971. This, however, is of no moment to decision and will be ignored.

subdivision b, which provided: "Under no circumstances shall payment be made in lieu of unused sick leave."[2]

By the amendment of February 23, 1971, subsection 10 (quoted *ante,* fn. 2), became subsection 9; and subsection 4, subdivision b, was amended to read: "Maximum accumulation of sick leave days and payment in lieu of unused days may be further regulated by resolution or Memorandum(s) of Understanding approved or adopted by the City Council. It is the specific intent of the City County that this subsection shall be retroactive to July 1, 1970."[3]

---

[2]Before the 1971 amendment, pertinent provisions of section 2104I read as follows: "SECTION 2104I. *Sick Leave.* Sick leave shall be defined as follows:

"1. Absence from duty because of illness or off-the-job injury, or exposure to contagious diseases as evidenced by certification from an accepted medical authority; or

"2. Absence from duty due to the death of a member of the employee's immediate family, . . ., provided such leave as defined in this subsection shall not exceed five (5) working days.

"Each incumbent of a line-item position shall accrue sick leave with pay on the following basis:

"1. Following completion of six (6) calendar months of continuous service, six (6) working days. Thereafter up to and including ten (10) completed years of service, one (1) working day for each completed calendar month of service. Upon completion of the tenth (10th) year of service and thereafter, two (2) working days for each completed calendar month of service.

"2. A completed calendar month for which benefits herein shall accrue is defined as a calendar month in which the employee has been in pay status for eleven (11) or more working days in that month.

"3. For all employees, sick leave shall begin with the first day of illness.

"4. The foregoing benefits are cumulative subject to the following restrictions:

"a. Not more than one hundred thirty (130) working days may be applied against sick leave for one given illness.

"b. Under no circumstances shall payment be made in lieu of unused sick leave.

"5. . . . . . . . . . . . . . . . . . . . .

"10. The right to benefits under the sick leave plan shall continue only during the period that the employee is employed by the City. This plan shall not give any employee the right to be retained in the service of the City, or any right of claim to sickness disability benefits after separation from the service of the City. . . ."

[3]Prior to the February 23, 1971, amendment, no payment in lieu of unused sick leave days was permitted. Query—whether an attempt by subsequent resolution or memorandum of understanding (or other means) to allow such payment (for unused sick leave time accrued during a period when payment was prohibited) would contravene California Constitution, article XI, section 10, adopted June 2, 1970, which provides: "A local government body may not grant extra compensation or extra allowance to a public officer, public employee or contractor after service has been rendered or a contract has been entered into and performed in whole or in part, or pay a claim under an agreement made without authority of law." (See, e.g., *Nelson* v. *City of Los Angeles,* 21 Cal.App.3d 916 [98 Cal.Rptr. 892], which factually is dissimilar.) By this opinion, we pass on no constitutional question, including the aforementioned. None has been advanced by

Petitioners rely upon section 2.02 of the memorandum of understanding of October 1973 in providing: "Except as hereinafter provided, other employment benefits consisting of payment for time not worked (sick leave, vacation, break periods, etc.) . . . shall not be increased during the term of this agreement, except that they shall be adjusted to reflect changes as they occur in the Salary Resolution . . ."

Petitioners do not point to anything in the December 1968 memorandum of understanding to support their position and we have found nothing therein which conceivably could bear upon this appeal. Only the quoted portion of section 2.02 of the October 1973 memorandum of understanding is of any materiality to decision.[4]

The court below, in part, found:

"16. There is no provision in any applicable MOU [Memorandum of Understanding], ordinance, or salary resolution which granted or which could be reasonably interpreted to grant to petitioners the right to receive any payments in lieu of accumulated and unused sick leave.

"17. The negotiating team, acting on behalf of the City of Santa Monica, and the authorized representatives of the Santa Monica Fire Fighters Local 1109 never intended that the members of the Santa Monica Fire Fighters Local 1109 of the International Association of Fire Fighters (AFL-CIO) be granted through the October 12, 1973 MOU or the December 17, 1968 MOU the right to receive any payments in lieu of accumulated and unused sick leave."[5]

either party. Furthermore, decision may be rested upon other satisfactory ground. (*In re Henry G.,* 28 Cal.App.3d 276, 278 [104 Cal.Rptr. 585].) We have noted this to forestall any future claim that our decision has passed upon constitutional problems, including article XI, section 10, *supra.*

[4]Section 2.06 of the October 1973 memorandum of understanding provides: "Merger of Negotiations. This Memorandum of Understanding represents the full and complete understanding of every kind or nature whatsoever between the parties hereto and all preliminary negotiations of whatsoever kind or nature are merged herein."

[5]In support of the opposition to the petition for writ of mandate, a declaration was presented made by Mr. Aronoff, director of administrative services and personnel for respondent CITY who was appointed in July of 1973 to the negotiating team and authorized to represent the CITY in negotiations with the authorized representatives of Santa Monica Fire Fighters Local 1109. In addition to the foregoing, his declaration stated: "[¶] 4. As a member of that negotiating team I am familiar with the terms and conditions of employment which were negotiated between the Fire Fighters and the City of Santa Monica. [¶] 5. All firemen employed by the City of Santa Monica have received sick leave with pay only when they have been absent from duty because of illness or because of death of an immediate member of their family. [¶] 6. Firemen employed in

"18. There is no ambiguity in Section 4B of Section 2104I of the Santa Monica Municipal Code as amended by Ordinance 860 (CCS) adopted February 23, 1971 with reference to payments in lieu of accumulated and unused sick leave in that the above-mentioned section merely waives the previous restrictions on payments in lieu of accumulated and unused sick leave and it does not grant the right to receive payments in lieu of accumulated and unused sick leave unless this right is specifically set forth and regulated by formula in a subsequent resolution or memorandum of understanding applicable to an employee or employees claiming this benefit.

"19. There is no ambiguity in either the December 17, 1968 MOU or the October 12, 1972 MOU with reference to payments in lieu of accumulated and unused sick leave in that the above-mentioned MOUS do not grant to employees covered by them the right to receive any payments in lieu of accumulated and unused sick leave.

"20. . . . . . . . . . . . . . . . . . . . ."

In its conclusions of law, the court among other things set forth "that there is no statutory basis to pay petitioners any lump sum payment in lieu of unused and accumulated sick leave" and also "that there is no evidence in the record that petitioners were granted the right to receive payments in lieu of unused sick leave by any applicable Memorandum of Understanding, ordinance, or salary resolution." Further conclusions similarly related to section 2104I of the municipal code in the 1971

the City of Santa Monica have never received any lump sum payment in lieu of sick leave benefits. [¶] 7. . . . [¶] 8. During the negotiations between the Santa Monica Fire Fighters Association and the City of Santa Monica in 1973, an annual lump sum payment in lieu of sick leave was offered to the authorized representatives of the employee association but was turned down by them during the negotiation period. [¶] 9. The Memorandum of Understanding executed in October of 1973, in particular Section 2.02, did not include any provision for a lump sum payment in lieu of sick leave either annually or upon termination of service. This benefit was not intended to be granted after it was turned down by the Fire Fighters Association and thus was not provided for in the employment agreement executed by them with the City of Santa Monica. [¶] 10. . . ." Petitioners presented an opposing declaration by Mr. Batters, past president of Local 1109, which stated: ". . .; that at no time during the negotiations between the Santa Monica Firefighters' Association and the City of Santa Monica in 1973, was a lump sum payment *upon termination of employment* in lieu of sick leave ever offered to the authorized representatives of the Firefighters' Association; that at no time did the Firefighters' Association ever turn down any *such* offer for payment in lieu of unused sick leave, and in fact requested at the negotiations that payment in lieu of unused sick leave be included as a term of the Memorandum of Understanding." (Italicized words were inserted in handwriting and were initialled by Mr. Batters.)

amendment of subsection 4, subdivision b, as not self-executing but an enabling clause making payments permissive in lieu of accumulated and unused sick leave time by subsequent resolutions or memorandum of understanding.

The court below thereafter denied the petition for writ of mandate and petitioners appeal.

## Discussion

 Prior to the amendment of February 23, 1971, to section 2104I of the municipal code, subsection 4, subdivision b, the latter code expressly provided: "Under no circumstances shall payment be made in lieu of unused sick leave." By the 1971 amendment, this was changed to provide: "Maximum accumulation of sick leave days and *payment in lieu of unused days may be further regulated by resolution or Memorandum(s) of Understanding approved or adopted by the City Council. . . .*" (Italics added.) This language is permissive and not self-executing. It merely authorized, without requiring, payment in lieu of unused sick leave days. (See, e.g., *Stockton Civic Theatre* v. *Board of Supervisors,* 66 Cal.2d 13, 16 [56 Cal.Rptr. 658, 423 P.2d 810].) Where nonself-executing language is involved, it is inoperative except as supplemented or implemented by a legal recognized manner. (See *Carter* v. *Seaboard Finance Co.,* 33 Cal.2d 564, 582 [203 P.2d 758]; *Peoples Finance etc. Co.* v. *Mike-Ron Corp.,* 236 Cal.App.2d 897, 900-901 [46 Cal.Rptr. 497]; *Frank Curran Lbr. Co.* v. *Eleven Co.,* 271 Cal.App.2d 175, 183 [76 Cal.Rptr. 753].)

Petitioners have failed to show the existence of any other provision, whether by ordinance or resolution or memorandum of understanding, which provides for the payment of cash in lieu of accumulated and unused sick leave days. Section 2.02 of the 1973 memorandum of understanding, quoted hereinabove, relates to existing sick leave benefits and nowhere purports to provide for a payment in lieu of accumulated and unused sick leave days. In the absence of a provision which provides for such payment, no such payment is authorized. A "public employee is entitled only to such compensation as is expressly provided by statute or ordinance regardless of the extent of services actually rendered. [Citations.]" (*Markman* v. *County of Los Angeles,* 35 Cal.App.3d 132, 135 [110 Cal.Rptr. 610].) It is "the settled rule that compensation for official services depends entirely upon the law; that statutes relating to such compensation are strictly construed in favor

of the government; that a public officer may only collect and retain such compensation as is specifically provided by law, and that any money paid by a governmental agency without authority of law may be recovered from such officer." (*County of San Diego* v. *Milotz,* 46 Cal.2d 761, 767 [300 P.2d 1].)

■ Petitioners point to "may be further regulated by resolution or Memorandum(s) of Understanding" found in subdivision "b" of the amendment of 1971 and urge that the word "further" "leaves the presumption that it [payment in lieu of unused days] already has been provided for in the Code"—but, contrary to their assumption, they fail to point out any provision elsewhere in the municipal code which makes provision for payment in lieu of unused sick leave days. Their argument in this respect is therefore without merit.

We hold that absent some specific statutory or other lawful authorization a cash payment for accumulated sick leave, like overtime work, is not allowed. (*Martin* v. *Henderson,* 40 Cal.2d 583 [255 P.2d 416]. See also *La Deaux* v. *County of Alameda,* 256 Cal.App.2d 261 [63 Cal.Rptr. 796].) Petitioners cite and rely upon cases involving vacation or holiday work (*Tevis* v. *City & County of San Francisco,* 43 Cal.2d 190 [272 P.2d 757]; *Adams* v. *City of Modesto,* 53 Cal.2d 833 [3 Cal.Rptr. 561, 350 P.2d 529]; *Pohle* v. *Christian,* 21 Cal.2d 83 [130 P.2d 417], considered in *Martin* v. *Henderson, supra,* 40 Cal.2d at p. 588). In each of these cases there were statutory or lawful regulations granting a right to payment which is inapposite to the case at bench.

Petitioners in their brief argue that they "at no time refused to take sick leave when due, but rather are being penalized for using said time frugally and honestly." A difficulty with their reasoning in this respect is that no sick leave has been shown to have become "due" or available or usable by any of the petitioners. Unlike vacation time, sick leave does not become usable unless there has not only been time earned (by a period of employment) but also a meeting of the requirements set forth in the definition of "sick leave", quoted in footnote 2, *ante.* These requirements include the following: (1) there must be illness or off-the-job injury or exposure to contagious disease evidence by medical certification or death of a member of the employee's immediate family; and (2) the length of time which the employee may use is restricted by various provisions, e.g., he is not entitled to take the full accumulated time which may exceed that permitted to be used for death of a family

member (5 working days) or for one given illness of the employee (not more than 130 working days). Here, there is no showing that petitioners met these requisites and restrictions to sick leave use and sick leave is unavailable to them in the absence of such a showing.[6]

### Conclusion

We conclude that by reason of the foregoing, since petitioners have failed to show the existence of any ordinance, resolution or memorandum of understanding which specifically or otherwise provides for a cash payment to any petitioner in lieu of accumulated sick leave days, their petition was correctly denied.

### Disposition

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 22, 1976.

---

[6]Of interest somewhat by the way of analogy is *Stevens* v. *Board of Education*, 9 Cal.App.3d 1017 [88 Cal.Rptr. 769], in which appellant school teacher sought mandate to compel payment to him for six days on which he appeared before the assessment appeals board seeking to have assessments raised on properties owned by others. The Education Code provided that days of absence for illness or injury allowed by law "may be used by the employee, at his election, in cases of personal emergency, including any of the following: . . . (c) Appearance in court as a litigant; . . ." His appearance before the assessment appeals board was not an appearance before a court. Also rejected was his contention that his appearance was a "personal emergency" within the meaning of the law. Consequently, he was not entitled to payment for the days he refrained from work despite his claim that he elected to use his sick leave periods therefor. (See also: *Los Angeles Fire & Police Protective League* v. *City of Los Angeles*, 23 Cal.App.3d 67 [99 Cal.Rptr. 908].)