[Civ. No. 15635. Fourth Dist., Div. Two. Dec. 9, 1976.]

RAYMOND L. MARSILLE et al., Plaintiffs and Respondents, v. CITY OF SANTA ANA et al., Defendants and Appellants.

## Counsel

Keith L. Gow, City Attorney, Edward J. Cooper, Assistant City Attorney, and Gail Clifford Hutton, Deputy City Attorney, for Defendants and Appellants.

Silver, Streller & Wells and Samuel J. Wells, Jr., for Plaintiffs and Respondents.

## Opinion

McDANIEL, J.—This appeal is a consolidation of three cases which raise the same issue: whether respondents (three former firemen-hereinafter "Firemen") with the City of Santa Ana (hereinafter "City") (1) may be compensated for their accumulated sick leave where they are awarded a disability retirement, and (2) may use their accumulated sick leave to postpone the date of their disability retirement.[1] Firemen, who were granted disability retirement, sought to have their accumulated sick leave applied for their benefit within the context of the two issues noted. When City refused to use their accumulated sick leave in this manner, each of the Firemen brought a petition for writ of mandate, asking the court to compel the city to compensate him for his accumulated sick leave and to modify his employment records to reflect a date of retirement which gives credit for his accumulated sick leave. Persuaded by the petitioners' contentions, the trial court issued peremptory writs of mandate. City appeals from that portion of the judgments which provides for payment to Firemen for sick leave accumulated during employment and the use of accumulated sick leave to extend their respective dates of retirement.

---

[1] The parties frame the issue in general terms, that is whether employees who participate in the Public Employees' Retirement System (PERS) may so use their accumulated sick leave. However, this case is not a class action suit brought by all PERS members. Therefore, the issue here, and our discussion and disposition of it, relate only to the three named firemen.

## FACTS

The essential facts, set forth in each of the three cases by way of stipulation, are as follows.

Each of the Firemen had been employed by the City of Santa Ana. The employment of each was terminated because of a physical disability which arose out of, and in the course of, his employment as a fireman. Raymond L. Marsille was employed from May 1, 1954, to June 12, 1973; John J. Hauck, Jr., was employed from June 16, 1955, to December 10, 1971; and Vernon E. Arritt was employed from July 5, 1951, to November 9, 1971. At the time that his employment by the City was terminated, each man had been on a leave of absence pursuant to Labor Code section 4850.[2] Marsille had been on leave for 316 days, Hauck for 112 days, and Arritt for 168½ days.

Using information provided by City, the Public Employees' Retirement System, with which City had contracted, granted each man a disability retirement pension, effective June 12, 1973, for Raymond L. Marsille, January 1, 1973, for John J. Hauck, Jr., and December 1, 1971, for Vernon E. Arritt. During his employment with the City, each man accrued unused sick leave.

## ISSUE ON APPEAL

Does Government Code section 21025.2 require, following a disability retirement, that Firemen:

(1) be compensated for their accumulated sick leave;

(2) be allowed to use their accumulated sick leave to extend their respective dates of retirement.

## THE PARTIES' CONTENTIONS

Both City and Firemen have taken a different approach in the analysis of the issue on appeal. For purposes of completeness, their respective contentions will be briefly summarized.

---

[2]Labor Code section 4850, discussed more fully below, provides in part that where a city fireman suffers a disability arising out of his employment, he shall be entitled to a leave of absence for up to one year while so disabled without a loss in salary.

## CITY'S CONTENTIONS

City attempts to set forth a logically organized argument in support of its position that Firemen should not be compensated for their accumulated sick leave benefits, and that their respective dates of retirement should not be extended by giving credit for their accumulated sick leave.

City argues in support of its position that because it is a chartered city (see Stats. 1953, ch. 4, p. 3736), the state Constitution gives it plenary powers to determine its civil service rules. It further cites *Bishop* v. *City of San Jose,* 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137], for the proposition that the setting and payment of salaries to city employees is a "municipal affair"; consequently, "Labor Code provisions establishing a prevailing wage law [are] not applicable to charter cities."

City next points to its ordinances which provide that where an employee is awarded a service retirement, as opposed to a disability retirement, payment will be given to the retiree for one-third of his accumulated sick leave. City argues that this provision is not applicable to Firemen Arritt and Hauck because it was enacted *after* termination of their employment and application for their retirement benefits. In addition, City notes that the respective petitions for Firemen's retirement filed by City on each fireman's behalf were for disability, not service, retirement.

City additionally argues that Firemen would not be deprived of a vested property right if they were not paid, nor given retirement date credit, for accumulated sick leave. Citing *Newmarker* v. *Regents of Univ. of Cal.,* 160 Cal.App.2d 640 [325 P.2d 558], City contends that sick leave is not a vested right.

City then turns to Government Code section 21025.2 which provides in relevant part as follows: "Notwithstanding any other provision of this article, the retirement of a member who has been granted or is entitled to sick leave . . . shall not become effective until the expiration of such sick leave with compensation . . . unless the member applies for or consents to his retirement as of an earlier date. Sick leave shall be subject to the regular requirements of law and rules governing the use of sick leave." City asserts: (1) this statute only applies to an employee who has been granted, or who is entitled to sick leave, and (2) the statute's provision that sick leave shall be "subject to the regular requirements of law and rules . . ." means, in this case, the Santa Ana Municipal Code which does

not afford rights regarding accumulated sick leave to employees receiving a disability retirement. City further notes that in the case of disability retirement, no statute specifically provides for the "right" to payment for accumulated unused sick leave, or for its use to extend the employee's date of disability retirement.

## FIREMEN'S CONTENTIONS

Rather than answer City's contentions as they were presented in its brief, Firemen's arguments revolve about Government Code section 21025.2. They assert that this statute is clear on its face and provides that a disability retiree is entitled to compensation for accumulated sick leave and to have his retirement date delayed by a crediting of that unused sick leave.

According to Firemen, City is really arguing that section 21025.2 is unconstitutional in that, according to City, it "represents an improper attempt by the California legislature to legislate in an area which is strictly a 'municipal affair.' " The balance of Firemen's brief then attempts to demonstrate why section 21025.2 is constitutional and to explain why City's interpretation of that statute (1) would require this court, in effect, to rewrite the section; (2) would violate the intent of the state Legislature as expressed in specified Labor Code sections; and (3) is contrary to the interpretation of the section by the state Attorney General.

## DISCUSSION AND DISPOSITION

As will be more fully explained below, we determine that Firemen, who were given a disability retirement, are entitled to be compensated for unused accumulated sick leave, and are entitled to have their dates of retirement delayed by a crediting of their accumulated sick leave.[3]

We begin by considering Government Code section 21025.2. When the meaning of a statute is the subject of judicial scrutiny, the court is required to follow certain precepts. For example, our function "is to construe the words of the Legislature by their ordinary meaning, not to expand their definition to include matters or persons not expressly

---

[3]While the briefs were helpful to us, we have developed a third approach for the discussion and disposition of the issues in this case. However, where pertinent, we will refer to the contentions presented by City and Firemen respectively.

covered nor included by the law making branch of government [citations]." (*Grossman* v. *Vaupel,* 13 Cal.App.3d 706, 710 [91 Cal.Rptr. 876].) Our Supreme Court has succinctly set forth other pertinent rules in *People* v. *Navarro,* 7 Cal.3d 248, 273 [102 Cal.Rptr. 137, 497 P.2d 481]: "A statute must be construed in light of the legislative purpose and design (*People* v. *Grubb* (1965) 63 Cal.2d 614, 620 [47 Cal.Rptr. 772, 408 P.2d 100]). In enforcing command of a statute, both the policy expressed in its terms and object implicit in its history and background should be recognized. (*Reimel* v. *Alcoholic Bev. etc. App. Bd.* (1968) 263 Cal.App.2d 706 [69 Cal.Rptr. 744].) . . . Consideration may . . . be given to other statutes *in pari materia* (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526])."

We turn now to an analysis of section 21025.2. As noted above, that section, in relevant part, provides "Notwithstanding any other provision of this article, the retirement of a member who has been granted or is entitled to sick leave . . . shall not become effective until the expiration of such sick leave with compensation . . . unless the member applies for or consents to his retirement as of an earlier date. Sick leave shall be subject to the regular requirements of law and rules governing the use of sick leave." ▮ Construing the words of this statute by their ordinary meaning, the statute clearly provides that the retirement of a member of the Public Employees' Retirement System will be delayed until the expiration of his sick leave with compensation. There are, however, three conditions recited for the statute's application: (1) the member must have been granted, or must be entitled to, sick leave; (2) sick leave is subject to the laws and rules governing its use; and (3) these protections need not be afforded if the member applies for, or consents to, his retirement as of an earlier date. We next consider each of these conditions.

### The Law Applicable to Sick Leave

The first question to be answered is what law is here applicable. City asserts that its municipal code is the law governing sick leave. We disagree.

▮ " 'Because the various sections of article XI fail to define municipal affairs, it becomes necessary for the courts to decide, under the facts of each case, whether the subject matter under discussion is of municipal or statewide concern.' [*Professional Fire Fighters, Inc.* v. *City*

*of Los Angeles* (1963) 60 Cal.2d 276, 294 [32 Cal.Rptr. 830, 384 P.2d 158].] . . . 'No exact definition of the term "municipal affairs" can be formulated, and the courts have made no attempt to do so, but instead have indicated that judicial interpretation is necessary to give it meaning in each controverted case. The comprehensive nature of the power is, however, conceded in all the decisions. . . .' *Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 147 [82 P.2d 434, 126 A.L.R. 838] . . . . [¶] In exercising the judicial function of deciding whether a matter is a municipal affair or of statewide concern, the courts will of course give great weight to the purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation [citation][.]" (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 62-63.)

The Legislature has enacted statutes dealing with retirement of public employees (Gov. Code, § 20000 et seq.). State statutes dealing with PERS matters preempt municipal provisions: "Any contract heretofore or hereafter entered into shall subject the contracting agency and its employees to all provisions of this part and all amendments thereto applicable to members, local miscellaneous members, or local safety members except such as are expressly inapplicable to a contracting agency unless and until it elects to be subject to such provision." (Gov. Code, § 20493; see also 57 Ops.Cal.Atty.Gen. 7, 8.) Here the City of Santa Ana entered into a contract with the Public Employees Retirement System. Therefore, we determine that the state statutes preempt City's municipal code in the area of retirement of City's employees.

*Member Granted or Entitled to Sick Leave*

As noted above, City asserts that sick leave is not a vested right. (It argues that Firemen were not granted, nor were entitled to, sick leave.) To an extent, City is correct in its assertion. However, the right to sick leave vests upon " ' . . . the happening of the contingency [of illness]. . . .' " (*Newmarker* v. *Regents of Univ. of Cal., supra,* 160 Cal.App.2d 640, 647.)

Firemen assert they were entitled to sick leave because their industrial injuries, entitling them to disability retirement, fall within City's definition of sick leave as set forth in its municipal code, sections 9-160 and 9-161: "Sick leave is construed to mean absence because of an illness

that will prevent the employee from performing the duties of his position . . . ." (§ 9-160.) Section 9-161 establishes the circumstances under which an employee may use sick leave: "Sick leave . . . shall be allowed only in case of necessity and actual sickness or *disability*." (Italics added.) However, as we have concluded in our earlier discussion, the law applicable here is found in state statutes, not in City's municipal code. Therefore, we must look to state statutes to determine whether Firemen were granted, or are entitled to, sick leave.

■  Firemen here are entitled to sick leave. Statutes and cases dealing with this general subject matter indicate an intent on the part of the Legislature for PERS members who are awarded disability retirement to be given full compensation for accumulated sick leave. For example, the Labor Code contains provisions directly relating to members of the PERS. Section 4850 of that code provides in pertinent part as follows: "Whenever any . . . city fireman . . . who is a member of the Public Employees' Retirement System . . . is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his duties, he shall become *entitled,* regardless of his period of service with the city . . . *to leave of absence while so disabled without loss of salary,* in lieu of temporary disability payments, if any, which would be payable under this chapter, for the period of such disability but not exceeding one year, or until such earlier date as he is retired on permanent disability pension. This section shall apply . . . to city firemen . . . who are members of the Public Employees' Retirement System . . . ." (Italics added.) In *Austin* v. *City of Santa Monica,* 234 Cal.App.2d 841, 846 [44 Cal.Rptr. 857], the court held that " 'salary' as used in section 4850, must be understood as encompassing the *entire compensation* to which the employe is entitled. . . ." (Italics added.) Furthermore, Government Code section 20022, a part of the PERS legislation, defines compensation as ". . . the remuneration paid in cash out of funds controlled by the employer, plus the monetary value, as determined by the board of living quarters, board, lodging, fuel, laundry and other advantages of any nature furnished a member by his employer in payment for his services or for time during which the member is excused from work because of holidays, sick leave, vacation, compensating time off, or leave of absence . . . ." It is clear, therefore, that the Legislature's intent was to have PERS members receive full compensation for accumulated unused sick leave. (Cf. Gov. Code, § 19332 ". . . [¶] If an employee is unable to return to work at the time or during the period he is entitled to permanent

disability compensation. . . he shall be paid any sick leave balance, vacation balance, or accumulated compensable overtime.").

█ Similarly, Firemen are entitled to have their respective dates of retirement delayed until the expiration date of their accumulated sick leave. (See Gov. Code, § 21025.2; 57 Ops.Cal.Atty.Gen. 318, 319-320: "The effective retirement date of an employee is delayed until the expiration date of his accumulated sick leave. That is, assuming that the disabled retiree has 30 days of accumulated sick leave, the effective date of his retirement would be the first day after the expiration of 30 working days. The employee would remain on the payroll in the customary manner for the 30 working days and would receive his normal compensation through the applications of his sick leave credits.") (See also 55 Ops.Cal.Atty.Gen. 426, 426-427: "[S]ection 21025.2 provides that the employee may defer retirement until the expiration of sick leave. . . .")

On the basis of the above discussion, we conclude that the state statutes dealing with PERS are the applicable law in this case, and that unless one or all of the Firemen consented to, or applied for, retirement as of an earlier date, each is entitled to receive full compensation for his unused sick leave and to have his date of retirement delayed until the expiration of his sick leave.

*Firemen's Consent to, or Application for,*
*Sick Leave*

We next turn to the third condition of section ˙21025.2 and a determination of whether each fireman here applied for, or consented to, retirement as of an earlier date. The record indicates that the three men did not themselves apply for disability retirement; rather, City applied, on each man's behalf, to the PERS for a disability retirement pension. █ In this situation it cannot be said that the *Firemen* applied for an early retirement.

However, we must next determine whether each man consented to the retirement date given to him. The record is replete with sufficient indications that these individuals did not consent to the retirement date assigned to each (e.g., letters of protest to City; the filing of the cases here under consideration).

CONCLUSION

The judgment is affirmed.[4]

Gardner, P. J., and Morris, J., concurred.

A petition for a rehearing was denied January 5, 1977, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied February 3, 1977.

---

[4]Our decision is not altered by the recently decided case of *Van Riessen* v. *City of Santa Monica,* 63 Cal.App.3d 193 [133 Cal.Rptr. 618], (petition for hearing pending before the state Supreme Court), because that case is distinguishable from the one before us. There petitioners, nine firemen retired from the City of Santa Monica Fire Department, appealed from the judgment denying their petition for writ of mandate which sought to compel the City of Santa Monica to make monetary payment to each of them for unused sick leave days which had been accumulated prior to retirement. Unlike the situation in the case before us, *Van Riessen* is concerned with the interpretation of the Santa Monica municipal code and amendments thereto, as well as with the interpretation of certain memoranda of understanding entered into between the City of Santa Monica and the firefighters' union. There is no indication in *Van Riessen* that the City of Santa Monica had contracted with the Public Employees' Retirement System; presumably that city had not because the court made no reference to the PERS provisions found in the Government Code. Furthermore, while the ex-firemen in the present case are concerned with receiving compensation for their accumulated unused sick leave, they are also concerned with using that unused sick leave to defer their *disability* retirement dates, an issue not before the *Van Riessen* court.