[Civ. No. 40907. First Dist., Div. One. Mar. 6, 1978.]

DISTRICT ELECTION OF SUPERVISORS COMMITTEE FOR 5% et al., Plaintiffs and Respondents, v.
THOMAS M. O'CONNOR, as City Attorney, etc., et al., Defendants and Appellants.

**COUNSEL**

Thomas M. O'Connor and George Agnost, City Attorneys, James J. Stark and Burk E. Delventhal, Deputy City Attorneys, for Defendants and Appellants.

Roger Bernhardt and Carol Silver for Plaintiffs and Respondents.

**OPINION**

RACANELLI, P. J.—Defendants and appellants, Thomas M. O'Connor and Thomas Kearney, City Attorney and Registrar of Voters of the City and County of San Francisco, respectively, appeal from a judgment

entered on November 4, 1976, granting a preliminary injunction[1] enjoining them from (1) validating no more of the signatures to a proposed initiative measure than 5 percent of the total votes cast at the last mayoral election, in accordance with the standard provided by section 9.111 of the Charter of the City and County of San Francisco, and (2) refusing to place plaintiffs' and respondents' initiative measure on the November 1976 ballot upon such validation.

Plaintiffs and respondents, an unincorporated association, and certain named resident taxpayers, individually and representatively, filed the underlying action for declaratory and injunctive relief seeking to place an initiative measure on the November 1976 general election ballot to amend the Charter of the City and County of San Francisco (hereafter city) to provide for election of its board of supervisors by district. Respondents alleged that the initiative proposal qualified upon obtaining validated signatures equal to 5 percent of the total votes cast in the city's last mayoral election in accordance with sections 9.108 and 9.111 of the city charter.[2] Appellants in their memorandum of points and authorities in opposition to respondents' motion for a preliminary injunction, contended that the charter amendment process is governed

---

[1] An order granting an injunction is an appealable order. (Code Civ. Proc., § 904.1, subd. (f).) "Injunction" includes a preliminary injunction. (*Socialist Workers etc. Committee v. Brown* (1975) 53 Cal.App.3d 879 [125 Cal.Rptr. 915]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 77, p. 4088.)

[2] The charter provides in relevant part as follows:
Section 9.108   Initiative, Referendum, and Recall
"The registered voters shall have power to propose by petition, and to adopt or to reject at the polls, any ordinance, act or other measure which is within the power conferred upon the board of supervisors to enact, or any legislative act which is within the power conferred upon any other board, commission or officer to adopt, *or any amendment to the charter.* Such ordinance, act, *charter amendment* or other measure may be so proposed by filing with the registrar a petition setting forth said measure in full, signed by registered voters of the city and county as many in number as the percentages hereinafter required of the entire vote for all candidates for the office of mayor cast at the last preceding regular municipal election. . . ." (Italics added.)
Section 9.111   Time of Election
"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"If the petition accompanying a proposed initiative measure or declaration of policy be signed by registered voters equal in number to *five percent but less than ten percent* of the said entire vote [cast for mayor at the last preceding general municipal election], then such measure or measures, without alteration, shall be submitted by the registrar to a vote of the electorate at the next general state or municipal election that shall occur at any time after thirty days from the date of the certificate of sufficiency attached to the petition accompanying such measure unless the board of supervisors, by ordinance, direct that the measure or policy be voted on at a special election prior thereto." (Italics added.)

by section 34459 (and related sections) of the Government Code[3] requiring signatures of qualified electors equal to 10 percent of the total votes cast at the last gubernatorial election.

*Mootness*

At oral argument the parties stipulated that the proposed initiative measure properly qualified for the November 1976 ballot through submission of validated signatures of qualified electors in a number greater than 10 percent as required by Government Code section 34459. The validity of the results of that election is not an issue in this appeal. ■ While the issue is arguably moot in the factual context presented,[4] both sides contend that the question presented is of substantial public interest and should nevertheless be adjudicated.[5] We agree.

"It is now established law that where, as in the case at bench, issues on appeal affect the general public interest and the future rights of the

---

[3]The relevant sections of the Government Code provide in pertinent part:

Section 34459: "The charter of any city may be amended or repealed by proposals submitted by the governing body on its own motion or by petition signed by 15 percent of the registered electors, or both.

"The charter of a city and county may be amended or repealed by proposals submitted by the governing body or by a petition signed by *10 percent of the qualified electors* of the city and county, computed upon the total number of votes cast in the city and county for all candidates for Governor at the last general election at which a Governor was elected, or both. Such proposals shall be submitted to the electors at either a special election called for that purpose or at any general or special election." (Italics added.) This section as originally enacted in 1969 included cities and counties within the provisions of the first paragraph; the gubernatorial basis for determining the requisite percentage was contained in section 34462. The 1974 amendment retains that basis but reduces the required percentage of "qualified" electors to 10 percent in proposals involving a city and county charter.

Section 34461. "If the petitions have a sufficient number of signatures the *governing body* of the . . . city and county shall submit the amendment or amendments proposed . . . to the electors. . . . The election . . . shall be held at a date . . . *fixed by the governing body* . . . , not less than 40, and not more than 60, days after . . . advertising in the official paper." (Italics added.)

[4]We take judicial notice of the following facts: The proposed initiative measure (proposition T) was approved by the voters at the November 1976 general municipal election; a subsequent initiative measure seeking to repeal proposition T was rejected by the voters in a special election held on August 2, 1977; that pursuant to the 1976 charter amendment, the election of members of the board of supervisors was conducted by district at the general municipal election held in November 1977.

[5]In urging that the appeal not be dismissed as moot, appellants properly argue that the same issue and resultant uncertainty will arise each time an initiative petition to amend the city charter is circulated. Moreover, the parallel legislative provisions are in further conflict as to the official body authorized to call the election as well as the time at which such election may be held. (See charter § 9.111 and Gov. Code, § 34461; see fns. 2 and 3, *ante.*)

parties, and there is reasonable probability that the same questions will again be litigated and appealed, an appellate court may, although the appeal be subject to dismissal, nevertheless adjudicate the issues involved. [Citations.]" (*People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 468 [89 Cal.Rptr. 290]; see also *Hardie* v. *Eu* (1976) 18 Cal.3d 371, 379 [134 Cal.Rptr. 201, 556 P.2d 301] [cert. den., 430 U.S. 969 (52 L.Ed.2d 360, 97 S.Ct. 1652)]; *Johnson* v. *Hamilton* (1975) 15 Cal.3d 461, 465 [125 Cal.Rptr. 129, 541 P.2d 881]; *Clark* v. *Patterson* (1977) 68 Cal.App.3d 329, 332 [137 Cal.Rptr. 275]; *Rees* v. *Layton* (1970) 6 Cal.App.3d 815, 819 [86 Cal.Rptr. 268]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 470, pp. 4426-4427.) Moreover, it further appears that section 34459 of the Government Code has not been previously interpreted and thus presents a question of first impression. We have concluded the issues presented on appeal fall within the public interest exception to the mootness doctrine and are ripe for adjudication. (*People* v. *West Coast Shows, Inc., supra,* 10 Cal.App.3d 462, 468; *Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213]; 6 Witkin, Cal. Procedure, *op. cit.*) Accordingly, we turn to the merits.

### *Issue and Contention*

It is undisputed that an irreconcilable conflict exists between the provisions of the city charter and Government Code section 34459 et seq. relating to charter amendment procedures. The precise question presented is whether in such circumstances state law governs over conflicting provisions of a chartered city and county.

Appellants contend that prior to the constitutional amendments adopted in 1970 (discussed *infra*), article XI, section 8, exclusively governed the charter amendment process as a matter of organic state law; that the repeal of section 8 (specifically subd. (h)) was not intended to affect or substantially change matters relating to the distribution of powers between state and local governments, and that the charter amendment process established under the statutory scheme[6] enacted by the Legislature, and effective upon passage of such amendments, manifested an intention to maintain exclusive regulation over the charter amendment process as a matter of statewide concern.

Respondents contend, in essence, that historically the conduct and regulation of municipal affairs, including the election of municipal

[6]Sections 34450 through 34463 of the Government Code.

officers, was exclusively within the power of a city whose charter so provides and controls over conflicting general laws. Further, that even if Government Code section 34459 applies to chartered cities, the field of regulation was not preempted thereby and less onerous local regulation in the same field is permissible.

We hold for the reasons hereinafter discussed that the regulation of the charter amendment process is a matter of statewide concern governed exclusively by general laws which supersede conflicting provisions in a city and county charter. Accordingly, we conclude that the provisions of the charter (notably §§ 9.108 and 9.111), insofar as they purport to authorize and establish different procedures regulating charter amendments by the initiative process, are invalid; the trial court erred in issuing its preliminary injunction.

*Analysis of Constitutional Provisions*

We begin our analysis by reviewing relevant provisions of the California Constitution as interpreted in the decisions dealing with regulatory powers conferred and limitations imposed upon a chartered city and city and county.

I. *Earlier Provisions*: Under the original provisions of the Constitution of 1879, cities were empowered to adopt charters subordinate to the general laws of the state (art. XI, §§ 6 and 8 (1879)). In 1896 the Constitution was amended to provide that city charters adopted pursuant to constitutional authority, "except in municipal affairs," were subject to general laws (art. XI, § 6 (1896)); however, the powers conferred thereunder were special and confined to those enumerated in the charter, the general laws being applicable even as to local matters where the charter was otherwise silent. (See *Clouse* v. *City of San Diego* (1911) 159 Cal. 434 [114 P. 573].)

II. *1914 Provisions*: The 1914 constitutional amendments effected a major change in the distribution of power between the Legislature and chartered cities. By empowering chartered cities to "make and enforce all laws . . . in respect to municipal affairs, subject only to the [charter] restrictions . . . , and in respect to the other matters they shall be subject to . . . general laws" (art. XI, § 6 (1914)), chartered cities no longer were required to specifically enumerate their powers and through such broad grant of residual powers became freed from general laws dealing with municipal affairs irrespective of whether conflicting state provisions

existed. (See Sato, *"Municipal Affairs" in California* (1972) 60 Cal.L.Rev. 1055, 1057 [criticizing dictum to the contrary in *Bishop* v. *City of San Jose,* 1 Cal.3d 56 (81 Cal.Rptr. 465, 460 P.2d 137)]; *West Coast Adver. Co.* v. *San Francisco* (1939) 14 Cal.2d 516, 521 [95 P.2d 138].) Section 6 further provided that such chartered cities "may amend their charters in the manner authorized by this Constitution"; section 8 contained detailed provisions affecting charters of cities[7] and cities and counties, including procedures for the amendment of such charters.[8]

While a number of amendments were made to article XI over the following years,[9] no basic change occurred in the allocation of such powers. (See Sato, *"Municipal Affairs" in California, supra,* 60 Cal.L.Rev. 1055, 1058.) It is clear that prior to the 1970 constitutional revision repealing former article XI, the constitutionally prescribed procedure for amending a city charter was exclusive and controlling over any conflicting provisions in a subordinate city charter. (*Uhl* v. *Collins* (1932) 217 Cal. 1, 3 [17 P.2d 99, 85 A.L.R. 1370]; *Garver* v. *Council of City of Oakland* (1929) 96 Cal.App. 560 [274 P. 375]; *Garver* v. *Williams* (1929) 96 Cal.App. 118 [273 P. 604]; see *Montgomery* v. *Board of Admin., etc.* (1939) 34 Cal.App.2d 514, 520 [93 P.2d 1046, 94 P.2d 610]; 34 Cal.Jur.2d, Municipal Corporations, § 52, pp. 653-656, and § 55, p. 657; see also 2

---

[7]A consolidated city and county falls within the purview of these provisions. (Cal. Const., art. XI, § 7 (1894); now art. XI, § 6 (1970); see also 1936 amendments to art. XI, § 8, adding the phrase "or any city and county" whenever the word "city" appeared.)

[8]Article XI, section 8, then provided in pertinent part:

"The charter of any city or city and county may be amended by proposals therefor submitted by the legislative body of the city on its own motion or on petition signed by fifteen per cent of the registered electors, or both. Such proposals shall be submitted to the electors only during the six months next preceding a regular session of the Legislature or thereafter and before the final adjournment of that session and at either a special election called for that purpose or at any general or special election. Petitions for the submission of any amendment shall be filed with the legislative body of the city or city and county not less than sixty days prior to the general election next preceding a regular session of the Legislature. The signatures on such petitions shall be verified by the authority having charge of the registration records of such city or city and county, and the expenses of such verification shall be provided by the legislative body thereof.

"If such petitions have a sufficient number of signatures the legislative body of the city or city and county shall so submit the amendment or amendments so proposed to the electors. Amendments proposed by the legislative body and amendments proposed by petition of the electors may be submitted at the same election. The amendments so submitted shall be advertised in the same manner as herein provided for the advertisement of a proposed charter, and the election thereon held at a date to be fixed by the legislative body of such city, not less than forty nor more than sixty days after the completion of the advertising in the official paper."

[9]In 1936, section 8 was amended in certain procedural particulars and sub-section headings added. Subdivision (h) then specified the charter amendment procedures in substantially the same language as contained in the 1914 version of section 8 (see fn. 8 *ante*).

McQuillin, Municipal Corporations (rev. ed. 1966) § 4.97.) Since the allocation of powers effected by the 1914 amendments, the residual authority conferred upon chartered cities was consistently limited to municipal affairs (a limitation retained by the latest amendments; see art. XI, § 5 (1970)). And in exercising the plenary authority conferred by the Constitution in regulating municipal affairs, it is well established that the charter provisions concerning municipal affairs were exclusive and governed over general laws in the same subject-matter area, notwithstanding the absence of a specifically enumerated power, so long as such power was exercised within the limitations or restrictions imposed by the charter itself. (*Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336, 347 [71 Cal.Rptr. 135, 444 P.2d 711]; *West Coast Adver. Co.* v. *San Francisco, supra,* 14 Cal.2d 516, 521.) Procedures enacted by such "home rule" cities extended to: the conduct of election of municipal officers (*Rand* v. *Collins* (1931) 214 Cal. 168, 172 [4 P.2d 529] [charter provision of the consolidated City and County of San Francisco authorizing certain municipal officers as appointive and not elective]; *Socialist Party* v. *Uhl* (1909) 155 Cal. 776, 788 [103 P. 181] [general primary laws inapplicable to nomination of municipal officers under charter provisions]; *People* v. *Worswick* (1904) 142 Cal. 71, 75 [75 P. 663] [general registration laws inapplicable to mayoral election]; *Mackey* v. *Thiel* (1968) 262 Cal.App.2d 362 [68 Cal.Rptr. 717] [city councilman election]; *Rees* v. *Layton, supra,* 6 Cal.App.3d 815, 821 [city ordinance limiting vocational ballot designations in local election to incumbents determined a municipal affair but struck down on equal protection grounds]); employment and compensation of public employees (*City of Pasadena* v. *Charleville* (1932) 215 Cal. 384, 389 [10 P.2d 745] [overruled on other grounds, *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 585-586 (79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194)]; *Adams* v. *Wolff* (1948) 84 Cal.App.2d 435, 437 [190 P.2d 665]; see also *Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 64), and other areas of internal affairs not otherwise preempted by general laws of statewide concern or expressly excepted therefrom. (Cf. *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001] [residential rent control charter amendment invalid to the extent it conflicted with summary general laws fully occupying field of landlords' possessory remedies]; *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 137 [98 Cal.Rptr. 281, 490 P.2d 793] [local utility users' tax expressly exempted from statewide regulatory act]; *City of Santa Clara* v. *Von Raesfeld* (1970) 3 Cal.3d 239, 245 [90 Cal.Rptr. 8, 474 P.2d 976] [interest yield on municipal revenue lands for a regional water pollution control project held a matter of statewide concern]; *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d

276 [32 Cal.Rptr. 830, 384 P.2d 158] [labor relations deemed a matter of statewide concern].)

III.   *1970 Revisions and Concurrent Legislative Enactments*

In 1970 the relevant constitutional provisions were extensively modified as part of an overall revision and streamlining effort. (See *Clark* v. *Patterson, supra,* 68 Cal.App.3d 329, 335, fn. 6.) ■ Accordinging to the official report of the revision commission the adopted revisions (art. XI, § 3, subds. (a) and (b)) were designed to achieve, inter alia, the removal of cumbersome detailed provisions (including certain arbitrary limitations) in the charter enactment and revision process that could be better treated by statute, and to establish uniformity in such process between chartered cities and chartered counties (see 1968 Report of the Cal. Const. Revision Com., coms., pp. 53 and 54); in our determination of the intent of such revisions, the official commission report is entitled to great weight. (See *People* v. *Superior Court (Carl W.)* (1975) 15 Cal.3d 271, 277 [124 Cal.Rptr. 47, 539 P.2d 807]; *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) But such revisions neither contemplated nor effected any substantive change in the balance of powers between the local and state branches of government;[10] indeed, the electorate clearly expressed its will that the relevant provisions are to be construed as restatements of

---

[10]We note that in the proponents' rebuttal argument contained in the voters handbook, the chairman of the Constitution Revision Commission states that the measure "does not change the 'traditional relationships' of local government. . . ." [and] . . . "No change is made in the existing powers of the Legislature or local governments to deal with regional problems. . . ."

Further, in the detailed analysis prepared by the Legislative Counsel in conjunction with the constitutional amendment (prop. 2, Partial Constitutional Revision: Local Government) submitted to and adopted by the voters at the June 1970 election, the scope of the revision of article XI was explained as follows: "The revision would retain some existing provisions without change and would restate other provisions, some with and some without substantive change. In addition, certain existing provisions would be deleted from the Constitution, thus placing the subject matter of the deleted provisions from then on under legislative control through the enactment of statutes. Chapter 1264 of the Statutes of 1969 is such a statute. It will take effect if this measure is adopted."

In describing the effect of chapter 1264 of the Statutes of 1969 (enacted by the Legislature as Assem. Bill No. 1094 and approved by the Governor on Aug. 30, 1969, operative upon adoption of the proposed constitutional revision), the Legislative Counsel stated that the chapter "Enacts as statutes the substance, generally, of various provisions relative to cities and counties now found in the California Constitution which are to be omitted from proposed revised portions of the Constitution. [¶] The provisions to be deleted from the Constitution which would be enacted as statutes include: [¶] (1) Provisions establishing procedural requirements for the adoption, amendment, revision, or repeal of county charters. [¶] (2) Procedural provisions for the adoption, amendment,

such former constitutional principles without any substantive change. (See art. XI, § 13 (1970).)

In retaining the former language pertaining to charter adoption and amendment (through initiative or the governing body), the revisions merely effected a removal of the amendment procedures (*Clark* v. *Patterson, supra,* 68 Cal.App.3d 329, 335) in favor of uniform statutory regulation as a matter of continuing statewide concern. The legislative history unequivocally supports such an interpretation,[11] and the constitutional measure was submitted to the electorate against that background. (See fn. 10 *ante.*) The newly enacted legislation (Gov. Code, § 34459),[12] was made expressly applicable to chartered cities and cities and counties only, a purpose otherwise incapable of fulfillment were we to agree with respondents' contention that conflicting charter provisions should prevail. ■ In construing a statute, the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].)

The flaw in respondents' argument lies in its failure to recognize the basic distinction historically provided in the Constitution between the initiative and referendum powers reserved to chartered cities (formerly art. IV, § 1 (1911), subsequently renumbered art. IV, § 25, and now contained in art. II, § 11 (1976))[13] to enact and repeal ordinances, and

---

or repeal of city charters. [¶] (3) Provisions setting forth election procedures applicable to the adoption, amendment, or repeal of both county and city charters."

The same analysis describes the effect of the revision on the then existing constitutional procedures for the adoption, amendment, revision, and repeal of county charters and the adoption, amendment, and revision of city charters, as follows: "The basic procedural provisions for the adoption, amendment, revision, and repeal of county charters and the adoption, amendment, and revision of city charters would be revised and replaced with uniform provisions which would, in addition, permit counties and cities to repeal charters by a vote of the majority of the electors and approval of the Legislature, and permit the governing bodies of counties, as well as cities, to propose the adoption of charters. . . ." Although not controlling, such arguments submitted to the voters may be considered in aid of construction of the legislative intent. (See generally 45 Cal.Jur.2d, Statutes, § 170, p. 670.)

[11]In the Legislature's concurrent resolution adopting Assembly Constitutional Amendment No. 29 (Stats. 1969, res., ch. 331) repealing former article XI and ádding the revised version submitted to the electorate, the ballot measure was expressly conditioned upon enactment of Assembly Bill No. 1094, which by its terms was to become operative simultaneously with passage of the constitutional measure. (Stats. 1969, ch. 1264, § 4.)

[12]As amended in 1974; see footnote 3 *ante.*

[13]Article II, section 11, provides as follows: "Initiative and referendum powers may be exercised by the electors of each city or county *under procedures that the Legislature shall provide. This section does not affect a city having a charter.*" (Italics added.) (Formerly art. IV, § 25, added Nov. 8, 1966. Renumbered art. II, § 11, June 8, 1976.)

the initiative power exclusively applicable to charter amendments (former art. XI, § 8). Respondents' reliance on selected language from the opinion in *Lawing* v. *Faull* (1964) 227 Cal.App.2d 23 [38 Cal.Rptr. 417], is wholly misplaced. In *Lawing* (involving a referendum election on a local rezoning ordinance) the court was concerned with constitutional provisions authorizing initiative and referendum powers in chartered cities to enact or repeal ordinances (former art. IV, § 1, now found in art. II, § 11). In holding that the charter provisions prevailed over the constitutional requirement (20 percent voter signatures as opposed to 10 percent specified in former art. IV, § 1), the court examined the underlying policy of permitting flexibility in "home rule" municipalities "with respect to the local exercise of the initiative and referendum . . . dealing solely with matters on local legislation, . . ." (*Id.* at p. 29.) In so holding the court did not purport to qualify the long-recognized supremacy of article XI, section 8, which latter provision contained the exclusive procedure to be followed in order to amend a city charter.

### *Statutory Preemption*

█ In initiating the 1970 constitutional revisions with the avowed objectives of deleting extraneous detail and simultaneously authorizing statutory enactments to implement the charter amendment process authorized under revised article XI, section 3, subdivisions (a) and (b) (see *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129, 145), the Legislature manifested its intent to retain exclusive regulation of the charter amendment process, theretofore constitutionally mandated as a matter of statewide concern, through the statutes enacted for that sole purpose. (See fns. 10 and 11 *ante.*) While chartered cities with "home rule" provisions continue to maintain exclusive control over municipal affairs (formerly art. XI, § 6, now art. XI, § 5, subd. (a)) (see *Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 61), " 'As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation (the preemption doctrine).' " (*City of Santa Clara* v. *Von Raesfeld, supra,* 3 Cal.3d 239, 245-246.)

█ Since the constitutional provisions have never defined what constitutes a municipal affair, "it becomes necessary for the courts to decide, under the facts of each case, whether the subject matter under

discussion is of municipal or statewide concern. This question must be determined from the legislative purpose in each individual instance." (*Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* 60 Cal.2d 276, 294; see Sato, *"Municipal Affairs" in California, supra,* 60 Cal.L.Rev. 1055, 1080, for numerous examples of areas judicially determined to be within the domain of municipal affairs.) Although the Legislature is neither empowered to determine what is a municipal affair nor to transform such an affair into one of statewide concern, it is clear that "In exercising the judicial function of deciding whether a matter is a municipal affair or of statewide concern, the courts will of course give great weight to the purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation (see *Ex parte Daniels* (1920) 183 Cal. 636, 639-640 . . .), and it may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern." (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 63; see also *Marsille* v. *City of Santa Ana* (1976) 64 Cal.App.3d 764, 770-771 [134 Cal.Rptr. 743].)

■ To determine whether the Legislature intended to fully occupy the particular field (of charter amendment) formerly regulated by constitutional provisions "we may look to the ' "whole purpose and scope of the legislative scheme" ' . . . ." (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859 [76 Cal.Rptr. 642, 452 P.2d 930], quoting from *In re Lane,* 58 Cal.2d 99, 102-103 [22 Cal.Rptr. 857, 372 P.2d 897].) In undertaking such review, it is our duty, whenever possible, to interpret the statutes so as to make them workable and reasonable. (*City of Santa Clara* v. *Van Raesfeld, supra,* 3 Cal.3d 239, 248.) In enacting a comprehensive legislative scheme dealing with (1) procedural require-ments to adopt or repeal municipal ordinances through the initiative and referendum process reserved under article II, section 11 (see Elec. Code, §§ 4000-4061, added by Stats. 1976, ch. 248, § 3), which specifically excludes cities whose charters contain initiative provisions (Elec. Code, § 4061), and (2) the form of procedures (see Elec. Code, §§ 4080-4084) applicable only to amendments of charters adopted pursuant to article XI, section 3, of the Constitution and chapter 3, division 2, title 4, commencing with section 34450 of the Government Code (Elec. Code, § 4080), the Legislature further evidenced a clear purpose to maintain the fundamental distinction between the initiative process to enact or repeal ordinances on the one hand and to accomplish charter amendments on the other. In so doing, it unequivocally expressed its intention that the

relevant Government Code sections were to apply uniformly to all chartered cities on a footing consistent with the authority provided under article XI, section 3 (1970).

■ In light of the foregoing analysis, it is readily ascertainable that the Legislature meant to and did achieve the same paramount control over charter amendment procedures through statutory enactment as was formerly provided under the Constitution (*Clark* v. *Patterson, supra,* 68 Cal.App.3d 329, 335), as a matter of uniform statewide concern. Accordingly, we hold that in enacting general laws dealing with charter amendment procedures (Gov. Code, § 34450 et seq.), the Legislature was properly acting upon a matter of statewide concern with the intention of preempting that field of regulation to the exclusion of any attempted municipal regulation in the same field. To the extent that the provisions of the charter of the City and County of San Francisco (§§ 9.108, 9.111) are in conflict with said general laws (more particularly Gov. Code, § 34459), they are determined to be invalid. (*City of Santa Clara* v. *Van Raesfeld, supra,* 3 Cal.3d 239, 245-246; *Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 61-62; *Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* 60 Cal.2d 276, 292-293; see also *Bellus* v. *City of Eureka, supra,* 69 Cal.2d 336, 346; and *Galvan* v. *Superior Court, supra,* 70 Cal.2d 851, 863.)

Judgment reversed.

Elkington, J., and Sims, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 4, 1978.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.