[Civ. No. 52690. Second Dist., Div. Two. Aug. 29, 1978.]

KENNETH CAMPBELL, Plaintiff and Respondent, v.
CITY OF MONROVIA, Defendant and Appellant.

*Pursuant to Constitution, article VI, section 21.

## COUNSEL

Henry S. Barbosa, Acting City Attorney, for Defendant and Appellant.

Richard L. Knickerbocker, City Attorney (Santa Monica), as Amicus Curiae on behalf of Defendant and Appellant.

Fielder & Fielder and Hugh B. Fielder for Plaintiff and Respondent.

Memel, Jacobs, Pierno & Gersh, Martin J. Thompson and Stanley K. Jacobs as Amici Curiae.

## OPINION

**ROTH, P. J.**—Respondent was employed by appellant as a police officer for a period of some 27 years. He was relieved from duty due to physical disability (i.e., heart disease) arising out of his employment and placed on leave of absence with full pay in accordance with Labor Code section 4850.[1] After being thus accommodated for a period of approximately six months and following a determination by appellant that respondent's condition was permanent and stationary, respondent was terminated by disability retirement effective February 1, 1975, as a participant in the Public Employees' Retirement System (PERS). Respondent disputed the propriety of the retirement date, essentially on the ground that Govern-

[1]The section provides in pertinent part: "Whenever any city policeman . . . who is a member of the Public Employees' Retirement System . . . is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his duties, he shall become entitled, regardless of his period of service with the city . . ., to leave of absence while so disabled without loss of salary in lieu of temporary disability payments, if any, which would be payable under this chapter, for the period of such disability but not exceeding one year, or until such earlier date as he is retired on permanent disability pension. . . ."

ment Code section 21025.2[2] required appellant to continue him as an employee until such time as he had exhausted 86½ days of accumulated sick leave. When appellant declined to do so, respondent, on January 30, 1976, filed his complaint for damages, which, through various procedures not requiring description, became his petition for writ of mandate to compel the result sought. Following hearing on February 14, 1977, and on the basis of the filed pleadings and oral argument by counsel on both sides, the trial court made findings of fact and conclusions of law in support of its judgment dated May 16, 1977, granting a peremptory writ in respondent's favor commanding appellant, inter alia, to reinstate respondent to appellant's payroll effective February 1, 1975, and to maintain respondent on such payroll until the effective date of his retirement pursuant to Government Code section 21025.2 "by adding to February 1, 1975 a period of time equal to the total number of days sick leave accrued to" respondent's account as of that date. The appeal is from that judgment.

Appellant raises three issues:

1. Is the case controlled by the decision rendered in *Marsille* v. *City of Santa Ana* (1976) 64 Cal.App.3d 764 [134 Cal.Rptr. 743]?

2. Did the Legislature intend Government Code section 21025.2 to be a self-executing provision that supersedes the organic law of appellant?

3. Do appellant's local regulations entitle respondent to be paid sick leave unused at the time of his retirement?

In *Marsille,* three firemen employees of the City of Santa Ana each had been terminated because of physical disability arising out of and in the course of their employment. At the respective dates of termination each also had been on leave of absence pursuant to Labor Code section 4850 and each had accumulated sick leave to his credit which the city declined to apply so as to extend the otherwise applicable retirement dates.

The appellate court affirmed a judgment in favor of the employees based upon its analysis of Government Code section 21025.2 that:

---

[2]That section provides: "Notwithstanding any other provision of this article, the retirement of a member who has been granted or is entitled to sick leave or who is entitled to compensating time off for overtime, shall not become effective until the expiration of such sick leave with compensation and the expiration of such compensating time off with compensation, unless the member applies for or consents to his retirement as of an earlier date. Sick leave shall be subject to the regular requirements of law and rules governing the use of sick leave."

"As noted above, that section, in relevant part, provides 'Notwithstanding any other provision of this article, the retirement of a member who has been granted or is entitled to sick leave . . . shall not become effective until the expiration of such sick leave with compensation . . . unless the member applies for or consents to his retirement as of an earlier date. Sick leave shall be subject to the regular requirements of law and rules governing the use of sick leave.' Construing the words of this statute by their ordinary meaning, the statute clearly provides that the retirement of a member of the Public Employees' Retirement System will be delayed until the expiration of his sick leave with compensation. There are, however, three conditions recited for the statute's application: (1) the member must have been granted, or must be entitled to, sick leave; (2) sick leave is subject to the laws and rules governing its use; and (3) these protections need not be afforded if the member applies for, or consents to, his retirement as of an earlier date. We next consider each of these conditions.

### "The Law Applicable to Sick Leave

"The first question to be answered is what law is here applicable. City asserts that its municipal code is the law governing sick leave. We disagree.

"⁘ . . . . . . . . . . . . . . . . . . .

"The Legislature has enacted statutes dealing with retirement of public employees (Gov. Code, § 20000 et seq.). State statutes dealing with PERS matters preempt municipal provisions: 'Any contract heretofore or hereafter entered into shall subject the contracting agency and its employees to all provisions of this part and all amendments thereto applicable to members, local miscellaneous members, or local safety members except such as are expressly inapplicable to a contracting agency unless and until it elects to be subject to such provision.' (Gov. Code, § 20493; see also 57 Ops.Cal.Atty.Gen. 7, 8.) Here the City of Santa Ana entered into a contract with the Public Employees Retirement System. Therefore, we determine that the state statutes preempt City's municipal code in the area of retirement of City's employees.

### "Member Granted or Entitled to Sick Leave

"As noted above, City asserts that sick leave is not a vested right. (It argues that Firemen were not granted, nor were entitled to, sick leave.)

To an extent, City is correct in its assertion. However, the right to sick leave vests upon ' " . . . the happening of the contingency [of illness]. . . ." ' (*Newmarker v. Regents of Univ. of Cal., supra,* 160 Cal.App.2d 640, 647 [325 P.2d 558].)

"Firemen assert they were entitled to sick leave because their industrial injuries, entitling them to disability retirement, fall within City's definition of sick leave as set forth in its municipal code, sections 9-160 and 9-161: 'Sick leave is construed to mean absence because of an illness that will prevent the employee from performing the duties of his position. . . .' (§ 9-160.) Section 9-161 establishes the circumstances under which an employee may use sick leave: 'Sick leave . . . shall be allowed only in case of necessity and actual sickness or *disability*.' (Italics added.) However, as we have concluded in our earlier discussion, the law applicable here is found in state statutes, not in City's municipal code. Therefore, we must look to state statutes to determine whether Firemen were granted, or are entitled to, sick leave.

"Firemen here are entitled to sick leave. Statutes and cases dealing with this general subject matter indicate an intent on the part of the Legislature for PERS members who are awarded disability retirement to be given full compensation for accumulated sick leave. For example, the Labor Code contains provisions directly relating to members of the PERS. Section 4850 of that code provides in pertinent part as follows: 'Whenever any . . . city fireman . . . who is a member of the Public Employees' Retirement System . . . is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his duties, he shall become *entitled,* regardless of his period of service with the city . . . *to leave of absence while so disabled without loss of salary,* in lieu of temporary disability payments, if any, which would be payable under this chapter, for the period of such disability but not exceeding one year, or until such earlier date as he is retired on permanent disability pension. This section shall apply . . . to city firemen . . . who are members of the Public Employees' Retirement System . . . .' (Italics added.) In *Austin v. City of Santa Monica,* 234 Cal.App.2d 841, 846 [44 Cal.Rptr. 857], the court held that ' "salary" as used in section 4850, must be understood as encompassing the *entire compensation* to which the employe is entitled. . . .' (Italics added.) Furthermore, Government Code section 20022, a part of the PERS legislation, defines compensation as '. . . the remuneration paid in cash out of funds controlled by the employer, plus the monetary value, as determined by the board of living quarters, board, lodging, fuel, laundry and other advantages of any

nature furnished a member by his employer in payment for his services or for time during which the member is excused from work because of holidays, sick leave, vacation, compensating time off, or leave of absence . . . .' It is clear, therefore, that the Legislature's intent was to have PERS members receive full compensation for accumulated unused sick leave." (*Marsille* v. *City of Santa Ana, supra,* 64 Cal.App.3d at pp. 770-772.)

In *Patton* v. *Governing Board* 77 Cal.App.3d 495 [143 Cal.Rptr. 593], appellant was formerly employed by the San Jacinto Unified School District as a bus driver-mechanic and had been terminated as a result of his inability to renew his driver's license because of physical disability and his unwillingness to accept a different work assignment. Appellant applied for disability retirement and asserted his right to exhaust accumulated sick leave prior to its effective date, an application rejected by his employer after it was factually found he was qualified in all respects to perform the duties of the substitute assignment. On appeal from a judgment in favor of the school district, the appellate court determined: "The central issue in this case is whether one who is retired for disability is entitled to sick leave as a matter of law by reason of Government Code section 21025.2." (77 Cal.App.3d at p. 498.) It reasoned in pertinent part:

"As we see it the crucial question is what is the meaning of the language 'is entitled to sick leave?' The section *does not itself define* 'sickness' nor 'sick leave'; *it does provide that* '[s]ick leave shall be subject to the regular requirements of law and rules governing the use of sick leave.' Neither does the Education Code provide a definition of sick leave. *Section 45113* (former § 13583) of the Education Code *authorizes the governing board of a school district to prescribe written rules and regulations,* governing the personnel management of the classified service.

"*The rules and regulations of the District* adopted pursuant to this section, *provide* that . . . . (Italics added.)

"*.* . . . . . . . . . . . . . . . .

"To interpret section 21025.2 to mean that a member upon retirement is automatically entitled to all accumulated sick leave would be to render meaningless the language '*who has been granted or is entitled to sick leave.*' Furthermore, if we interpret that language to mean that one who is retired for disability is entitled to sick leave before using disability retirement *without further proof of sickness or injury,* then the final

sentence of the section becomes mere surplusage. *The section should not be read to automatically equate retirement for disability with entitlement to sick leave.* (Italics added.)

"Interpreting the words 'entitled to sick leave' according to their usual meaning, and giving significance to every part of the section including the final sentence, we conclude that this section simply provides that the retirement of a member, who is too sick to work (having provided proof of illness according to other requirements of law and rules governing the use of sick leave) and thus entitled to sick leave, shall not become effective until the expiration of such sick leave with compensation unless the member agrees to an earlier date.

"Having thus concluded that entitlement to sick leave is a factual issue requiring proof *in accordance with District rules,* the findings of the trial court, being supported by substantial evidence, are controlling." (77 Cal.App.3d at pp. 503-504, italics added.)

█ The rationale of *Marsille* appears to be that *entitlement* to sick leave is *established* by reference to state, rather than local, law and in this we find it unacceptable. *Patton,* on the other hand, reaches its conclusion respecting entitlement (or the lack of it) based on the "rules and regulations of the [school] District," i.e., local law. *Patton* thus points up the fact which we believe is decisive of the issue, i.e., that local authorities acting for a contracting agency are free (within the constraints of negotiation with their contracting members where unions or associations are involved) to determine *entitlement* to sick leave.

While there is no doubt, in our view, that questions pertaining to the retirement of persons employed by agencies contracting with PERS are to be answered by recourse to state rather than local law and that preemption on that issue occurs simply by virtue of the contractual relation. (*Marsille* v. *City of Santa Ana, supra,* 64 Cal.App.3d 764), we find no justification in reason, the applicable statutes or from other authority to conclude a contracting agency's own rules and regulations defining the nature and scope of sick leave benefits are of no moment and may be ignored. In our view, on the contrary, the language of section 21025.2 relating to the retirement of a member "who has been *granted* or is *entitled* to sick leave" can only be properly understood by reference to the rules and regulations established by the member's employer which define the member's rights to sick leave benefits. If this were not so, then, because of the absence of sick leave benefits in state statutes, the

necessary result would be no meaningful consideration of these rights could ever occur, as *these rights arise solely out of* and are determined by reference to *local laws, rules and regulations.*

Our conclusion in this respect finds support in *Gourley* v. *City of Napa* (1975) 48 Cal.App.3d 156 [121 Cal.Rptr. 290]. There, in considering the self-executing properties of Government Code section 21025.2, the court stated (at p. 163):

"Gourley also cites section 21025.5 of the Government Code in support of his contentions. That statute provides: 'Notwithstanding any other provision of this article, the retirement for disability of a member who *has been granted or is entitled to a leave of absence* with compensation, shall not become effective prior to the expiration of such leave of absence with compensation, unless the member applies for or consents to his retirement as of an earlier date.' (Italics added.)

". . . Before section 21025.5 of the Government Code can be made applicable to an employee, he must *have been granted or have been entitled to* a leave of absence with compensation. This section does not, in itself, grant or entitle the employee to such leave of absence.

"Since the personnel policies of a municipality are 'municipal affairs,' a chartered city has the authority to administer in this area. In *Bishop* v. *City of San Jose,* 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137], our Supreme Court discussed the subject of 'municipal affairs' at some length and held that the matter of setting and payment of salaries to city employees was a municipal affair and, thus, Labor Code provisions establishing a prevailing wage law were not applicable to charter cities." ■ Similarly, in our opinion, Labor Code section 4850 does not serve to establish either entitlement to sick leave beyond its own ambit nor the extent of such sick leave. It says no more than that during the period of disability of a member as defined in the section there shall be no loss of salary (including sick leave benefits), but it does not create the salary or any other benefit, nor purport to continue entitlement to any benefit beyond the period of disability it defines.

Likewise, in *Van Riessen* v. *City of Santa Monica* (1976) 63 Cal.App.3d 193 [133 Cal.Rptr. 618], a case involving a claim by service retired firemen previously employed by the City of Santa Monica for monetary payment for unused sick leave, the appellate court, in affirming a judgment denying the claim, reasoned: "Petitioners in their brief argue

that they 'at no time refused to take sick leave when due, but rather are being penalized for using said time frugally and honestly.' A difficulty with their reasoning in this respect is that no sick leave has been shown to have become "due" or available or usable by any of the petitioners. Unlike vacation time, sick leave does not become usable unless there has not only been time earned (by a period of employment) but also a meeting of the requirements set forth in the definition of 'sick leave', quoted in footnote 2, *ante.*" (*Van Riessen* v. *City of Santa Monica, supra,* at p. 200.) The definition referred to by the court was that found in the Santa Monica Municipal Code. While it is true *Van Riessen* is distinguishable on its facts from the case at bench, its rationale cannot thereby be dismissed. ■ The overriding consideration is that, while state statutes in the present context control the requirements for PERS member retirements, they do not define the nature or extent of factors, like the right to sick leave, which are peripheral thereto and which are properly within the control of a contracting agency.

■ Our conclusion in this respect, however, does not dispose of the matter, since it would operate to defeat respondent's claim only if appellant's own regulations require that result.[3]

The applicable portions of appellant's Resolution No. 3376 N.S. "Personnel System Rules and Regulations of the City of Monrovia, California" provide:

"SEC. 2. Sick Leave:

"(a) Sick leave is compensable only on bona fide sickness of the employee, and any sick leave taken for five (5) or more consecutive days, the employee shall present a doctor's certificate to the Personnel Officer.

"Each employee of the City is entitled to twelve (12) days of sick leave with pay (excluding the time during which he is not regularly assigned to work) for a calendar year of service, on the submission of satisfactory proof of the necessity for sick leave. For the purpose of computing sick leave, each employee shall be considered to work not more than five (5) days each week and sick leave shall accrue at the rate of one (1) day per month.

---

[3]While a contracting agency's rules must be examined in every instance where the question at bench is raised, it is also the case that whether benefits like those granted respondent by the trial court are required is a matter within the contracting agency's control.

"(b) Employees may accumulate up to a total of one hundred twenty (120) days, and any additional sick leave with pay beyond that accumulated shall be granted only with the approval of the City Council in accordance with their policy. New probationary employees do not receive sick pay until after successful completion of the six months probationary period, then six (6) days sick leave is automatically accrued and available.

"(c) A City employee who is entitled to temporary disability indemnity under the Labor Code may elect to take as much of his accumulated sick leave, or his accumulated vacation after his accumulated sick leave has become exhausted, as when added to his disability indemnity will result in payment to him of his full salary or wage.

"He is nevertheless entitled to medical, surgical and hospital treatment as provided in the Labor Code. When his accumulated sick leave and vacation is exhausted, he is still entitled to receive disability indemnity.

"(d) Holidays occurring during sick leave shall not be counted as a day of sick leave.

"(e) Sick leave shall not be taken as vacation time, nor compensated for in cash at any time.

"(f) A full-time, regular employee is entitled to five (5) days bereavement leave with pay which shall be charged against his accumulated sick leave.

"Bereavement leave is applicable when death occurs in the employee's immediate family. Such family shall include spouse, parents, children and other close relatives.

"(g) Police and Fire Department personnel are subject to the pertinent State codes related to injuries and disabilities on the job.

"(h) During the pendency of any disability retirement case the employees affected may draw their full pay for any sick leave time remaining to their credit. If the sick leave credit expires before the case is finally determined by the State Compensation Commission, the employee will be dropped from the payroll. In the event that the case is finally decided to be service connected, proper adjustment will be made." These provisions, in our judgment, set out the basis for respondent's accumulat-

ed sick leave and contain nothing which would alter his entitlement thereto under the circumstances present. Accordingly, we are of the opinion the judgment should be affirmed.

■ Nor may this determination be altered by the contention that statutory amendments and additions enacted in 1975 modified the terms of Government Code section 21025.2. The changes made appear in sections 21025, 21025.4 and 21025.5 as follows:

"§ 21025. If the medical examination and other available information show to the satisfaction of the board, or in case of a local safety member the governing body of the contracting agency employing such member, that the member is incapacitated physically or mentally for the performance of his duties in the state service and is eligible to retire for disability, the board shall forthwith retire him for disability, unless the member is qualified to be retired for service and applies therefor prior to the effective date of his retirement for disability or within 30 days thereafter, in which event the board shall retire the member for service. The governing body of a contracting agency upon receipt of the request of the board pursuant to Section 21024 shall certify to the board its determination under this section that the member is or is not so incapacitated." (Amended by Stats. 1975, ch. 655, § 4, p. 1416.)

"§ 21025.4. Notwithstanding any other provision of this article, the retirement for disability of a local safety member shall not be effective without the member's consent earlier than the date upon which leave of absence without loss of salary under Section 4850 of the Labor Code because of such disability terminates, or the earlier date during such leave as of which such disability is permanent and stationary as found by the Workmen's Compensation Appeals Board." (Added by Stats. 1975, ch. 655, § 5, p. 1416.)

"§ 21025.5. Notwithstanding any other provision of this article, the retirement for disability of a member, other than a local safety member, who has been granted or is entitled to a leave of absence with compensation, shall not become effective prior to the expiration of such leave of absence with compensation, unless the member applies for or consents to his retirement as of an earlier date." (Amended by Stats. 1975, ch. 655, § 6, p. 1416.)

When viewed correctly, these sections together with section 21025.2 (see fn. 2) constitute a coherent and consistent treatment of the subjects involved *viz*:

When a member is incapacitated he shall be retired for disability unless he chooses and is qualified for service retirement. (§ 21025.)

The date of such retirement is postponed for the period of sick leave or compensating time off for overtime to which he is entitled or which he has been granted. (§ 21025.2.)

The date of such retirement, if the member is a local safety member, is also postponed to accommodate the requirements of Labor Code section 4850. (§ 21025.4.)

Nonsafety members' retirement is similarly postponed where an entitled leave of absence is involved. (§ 21025.5.)

It is inconceivable that the addition and revisions made in sections 21025, 21025.4 and 21025.5 were intended in any way to vitiate the terms of section 21025.2, which was added in 1957 and never since altered. (See *Estate of McDill* (1975) 14 Cal.3d 831 [122 Cal.Rptr. 754, 537 P.2d 874]; *Favalora* v. *County of Humboldt* (1976) 55 Cal.App.3d 969 [127 Cal.Rptr. 907].) Had the Legislature contemplated revision of that section, it could easily have been accomplished directly.

The judgment is affirmed.

Beach, J., concurred.

**FLEMING, J.**—I concur.

A contract member of the state Public Employees' Retirement System has a right under state law to exhaust accumulated sick leave prior to retirement for disability. But entitlement to sick leave is a matter of local rule set by the local public agency, whose governing body establishes and defines the amount, accrual, and duration of sick leave. In delineating the scope of sick leave the public agency may be as generous or as niggardly as it chooses; and, conceivably, it could deny its employees sick leave altogether. However, once a public agency participant in the state retirement system has adopted and formulated a system of sick leave,

state law entitles an employee who qualifies for sick leave under the local rule to exhaust accumulated sick leave prior to retirement for disability. (Gov. Code, §§ 20493, 21025.2; *Marsille* v. *City of Santa Ana* (1976) 64 Cal.App.3d·764 [134 Cal.Rptr. 743].)

*Patton* v. *Governing Board* (1978) 77 Cal.App.3d 495 [143 Cal.Rptr. 593], does not hold to the contrary. In *Patton* the local rule required that an employee be sick and unable to work in order to qualify for sick leave. The local rule thus distinguished between sickness and disability, and since Patton was capable of working full-time for the school district in another job, he did not qualify for sick leave. Where the local rule defines sickness as inability to work, state law as set out in section 21025.2 does not require a grant of sick leave to employees capable of full-time work at the time of disability retirement. (*Patton,* pp. 502, 503, 504.) Under such a local rule a disabled police officer capable of full-time clerical work, a disabled fireman capable of full-time maintenance work, and, as in *Patton,* a disabled bus driver capable of full-time work as a mechanic are not entitled to sick leave. In so limiting sick leave the local rule does not conflict with state law.

At bench, however, the local rule of the City of Monrovia identified sickness as more or less coterminous with disability. Since respondent qualified for sick leave under the local rule, under state law he could insist on receiving sick leave prior to disability retirement. (Gov. Code, § 21025.2.)

A petition for a rehearing was denied September 19, 1978.