[Civ. No. 20059. Fourth Dist., Div. Two. May 18, 1979.]

WILLIAM E. WILLIS, Plaintiff and Respondent, v.
CITY OF GARDEN GROVE, Defendant and Appellant.

COUNSEL

Eric Lauterer, City Attorney, for Defendant and Appellant.

Hays, Petersen, Hays & Elder and Robert C. Hays for Plaintiff and Respondent.

OPINION

**MORRIS, J.**—The City of Garden Grove appeals from a judgment of the Superior Court of Orange County granting a peremptory writ of mandate directing the city to pay William E. Willis, a retired fireman, all of his sick leave accumulated and unused at the time of his disability retirement under the Public Employees' Retirement System (PERS).

The facts are not in dispute. William Willis was employed by the City of Garden Grove as a fireman, and has been retired on a service-connected disability retirement by the city pursuant to a contract between the city and PERS.

At the time of Willis' retirement in 1976, he received compensation for accumulated sick leave pursuant to the provisions of a memorandum of understanding (MOU) adopted by the city council after negotiations between the employees' bargaining unit (representing Willis) and the City of Garden Grove pursuant to Government Code section 3500 et seq.

The MOU provided for the allowance of and accrual of sick leave, proof of illness as a condition of entitlement to sick leave, effect of a leave of absence on sick leave accrual, and for a sick leave pay off. So far as the record reveals these are the only rules relating to sick leave benefits applicable to firemen employed by the city.

The sick leave pay off provision reads as follows:

"D. Sick Leave Pay-Off

"The following two options shall be available to the employees only one of which may be utilized. The option selected by an employee shall be communicated by him to the personnel officer and shall be the only

sick leave pay-off applicable to those hours accrued for the period covered by the option.

"Option 1: After accruing 360 sick leave hours, the City, on an annual basis, will bank one-half of the employee's annual unused sick leave and pay $.50 on the dollar, in cash, for the remaining one-half accrued.

"Option 2: The City shall pay an employee an amount equal to 25% of his total sick leave which has accrued as of the date of his retirement or disability retirement. All years of benefit not covered under Option 1 will be calculated using Option 2."

Willis selected option 2, and was paid an amount equal to 25 percent of the total sick leave he had accrued as of the date of his disability retirement. Thereafter he petitioned the superior court for a writ of mandate commanding the city to pay him the balance of his accumulated unused sick leave. The trial court concluded that Willis was entitled to the remaining accumulated sick leave by virtue of Government Code section 21025.2[1] as interpreted by this court in *Marsille v. City of Santa Ana* (1976) 64 Cal.App.3d 764 [134 Cal.Rptr. 743], and granted the writ. This appeal followed.

The city contends that Government Code section 21025.2 does not require the city to compensate Willis for all accumulated and unused sick leave, and that this court misinterpreted Government Code section 21025.2 in *Marsille,* and should now abandon that interpretation.

We agree that under the facts presented, section 21025.2 does not require the city to compensate Willis for the balance of his accumulated sick leave. We do not agree that such payment is mandated as a result of our interpretation of the law in *Marsille v. City of Santa Ana, supra,* 64 Cal.App.3d 764.

Section 21025.2 states: "[T]he retirement of a member [of PERS] who has been granted or is entitled to sick leave . . . shall not become effective until the expiration of such sick leave with compensation . . . unless the member applies for or consents to his retirement as of an earlier date. Sick leave shall be subject to the regular requirements of law and rules governing the use of sick leave."[2]

---

[1]All statutory references are to the Government Code unless otherwise noted.

[2]Section 21025.2 has now been amended to read as follows: "Notwithstanding any other provisions of this article, the retirement of a member who has been granted or is

Following primary rules of statutory construction, i.e., construing the language of the statute in accordance with its usual, ordinary meaning and if possible, giving effect to every word, phrase, sentence and part of the act in pursuance of the legislative purpose, we concluded in *Patton* v. *Governing Board* (1978) 77 Cal.App.3d 495, 504 [143 Cal.Rptr. 593], that section 21025.2 means that a retiree's entitlement to sick leave is dependent upon the eligibility of the person for sick leave at the time of retirement as determined by the requirements of law and the rules governing the use of sick leave.

In *Patton* the issue of the retiree's "entitlement to sick leave" was presented in the context of a dispute involving the definition of "sickness" entitling one to "sick leave." We concluded that such entitlement was a factual issue requiring proof in accordance with district rules governing the use of sick leave.

The instant matter presents no issue with respect to Willis' physical condition. Presumably incapacity or sickness is conceded. In this case, the issue of Willis' "entitlement to sick leave" involves a determination of the amount of accumulated sick leave he was eligible to receive at the time of retirement. That too is a factual issue to be determined in accordance with local rules relating to sick leave.

■ Section 21025.2 does not itself provide for the allowance or accrual of sick leave. It does not grant or entitle the employee to such leave of absence with compensation. (See *Campbell* v. *City of Monrovia* (1978) 84 Cal.App.3d 341, 349 [148 Cal.Rptr. 679].) Thus, the determination of the amount of sick leave to which an employee is entitled must necessarily depend upon the "regular requirements of law and rules governing the use of sick leave" just as the statute says. In the case at bench, the rules governing the use of sick leave by firemen of the City of Garden Grove are set forth in the MOU. (See *Robertson* v. *City of Inglewood* (1978) 84 Cal.App.3d 400 [148 Cal.Rptr. 560].)

A memorandum of understanding pursuant to section 3505.1, once accepted by vote of the governmental body becomes a binding agree-

entitled to sick leave . . . shall not become effective until the expiration of such sick leave with compensation . . . unless the member applies for or consents to his retirement as of an earlier date, or unless, with respect to sick leave, the provisions of a local ordinance or resolution or the rules or regulations of the employer provide to the contrary." (Stats. 1978, ch. 646.)

ment. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 334-335 [124 Cal.Rptr. 513, 540 P.2d 609], cert. den. 424 U.S. 943 [47 L.Ed.2d 349, 96 S.Ct. 1411].) The MOU between Willis' bargaining unit and the City of Garden Grove was approved by a vote of the city council. That MOU clearly limited the entitlement of employees to accumulated sick leave pay off to the two options hereinabove set forth. Having selected option 2, Willis was eligible to receive only 25 percent of the amount of sick leave theretofore accrued in accordance with other provisions of the same MOU.

Properly interpreted in the light of the factual issues presented, *Marsille* v. *City of Santa Ana, supra,* 64 Cal.App.3d 764, does not require that Willis receive any greater amount of sick leave than that provided by the MOU. In *Marsille* we were not concerned with a factual dispute regarding "entitlement" in the sense of eligibility for sick leave. There was no question but that the firemen involved in that case were *entitled or eligible* under the city's municipal code which provided that sick leave be allowed in " 'case of necessity and actual sickness or *disability.*' " (*Id.,* at p. 772, italics in original.) Moreover, there was no issue as to the amount of accumulated sick leave the firemen had accrued at the time of their retirement. At the time of the retirement of two of the firemen, the municipal code was silent as to the payment of any accumulated sick leave upon retirement. Thereafter, the city adopted a provision which awarded an employee on a service retirement, as opposed to a disability retirement, payment for one-third of his accumulated sick leave. The municipal code remained silent with respect to any payment of accumulated sick leave to employees retiring for disability. (*Id.,* at p. 768.)

On that factual record the issue was not one of determining "entitlement" to sick leave under rules governing the use of sick leave—the firemen were clearly eligible—but rather it was a question whether state law required the use of the sick leave prior to retirement for disability. The city had argued that the state law did not apply to delay retirement unless the city code had affirmatively afforded such rights. (*Marsille* v. *City of Santa Ana, supra,* 64 Cal.App.3d 764, 768-769.)

It was in that context that we held in *Marsille* that state statutes dealing with retirement under PERS contracts preempt the municipal code in the area of retirement of city employees. Although in *Marsille* we did not anticipate all future interpretative problems, we do not find our conclusion here or in *Patton* v. *Governing Board, supra,* 77 Cal.App.3d 495, inconsistent with the holding in *Marsille.* The distinction is well expressed

in the concurring opinion of Justice Fleming in *Campbell* v. *City of Monrovia, supra,* 84 Cal.App.3d 341, 353-354, as follows:

"A contract member of the state Public Employees' Retirement System has a right under state law to exhaust accumulated sick leave prior to retirement for disability. But entitlement to sick leave is a matter of local rule set by the local public agency, whose governing body establishes and defines the amount, accrual, and duration of sick leave. In delineating the scope of sick leave the public agency may be as generous or as niggardly as it chooses; and, conceivably, it could deny its employees sick leave altogether. However, once a public agency participant in the state retirement system has adopted and formulated a system of sick leave, state law entitles an employee who qualifies for sick leave under the local rule to exhaust accumulated sick leave prior to retirement for disability. (Gov. Code, §§ 20493, 21025.2; *Marsille* v. *City of Santa Ana* (1976) 64 Cal.App.3d 764 [134 Cal.Rptr. 743].)"

At bench the local rule of the City of Garden Grove delineated the scope of sick leave an employee could receive as a pay off on retirement, and set out the options to be selected by the retiring employee. Once Willis made that election, his qualification for sick leave under the local rule was fixed and he was entitled to have that (25 percent) accumulated sick leave exhausted prior to retirement for disability. He was entitled to no more.

Judgment reversed.

Tamura, Acting P. J., and McDaniel, J., concurred.