[Civ. No. 55520. Second Dist., Div. Four. Jan. 30, 1980.]

EVERETTE BATTERS et al., Plaintiffs and Appellants, v. CITY OF SANTA MONICA, Defendant and Respondent.

**COUNSEL**

Memel, Jacobs, Pierno & Gersh, Stanley K. Jacobs, Martin J. Thompson and Steven L. Maler for Plaintiffs and Appellants.

Richard L. Knickerbocker, City Attorney, and Shari K. Silver, Assistant City Attorney, for Defendant and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—Petitioners Everett Batters, Thomas Ponton, Jacob Mitchell, William Taylor, John Hassinger and Robert

Morse, firemen employed by respondent City of Santa Monica, sought a writ of mandate in the superior court to compel respondent city to postpone their respective disability retirement dates and to pay them unused and accumulated sick leave prior to the dates fixed for their disability retirements due to work-related permanent disabilities. The trial court denied the relief sought by petitioners and they have appealed from that judgment. We affirm the judgment.

I

*The Factual and Procedural History*

Petitioners were employed by respondent city in its fire department. Petitioner Batters commenced his duties on April 1, 1948, and worked continuously for the city thereafter; the remainder of the petitioners also have many years of service. All the petitioners have become permanently disabled due to work-related injuries and illnesses. Petitioners Batters, Mitchell and Taylor suffer from various forms of heart disease, including hypertension; Ponton suffers from pulmonary disease; Hassinger has a degenerative condition in his right knee while Morse has been diagnosed as having back strain, degenerative arthritis and disc disease. During the years of their employment petitioners have accumulated a total of 2,416½ sick-leave days.[1]

In 1977, all of the petitioners were placed on disability leave of absence by respondent city, pursuant to Labor Code section 4850.[2] Respondent city is a member of, and subject to, a contract with the Public Employees' Retirement System (sometimes hereinafter referred to as the Retirement System). The Retirement System administers the retirement program for the city's employees pursuant to Government Code section 20000 et seq. Following the disability leaves of absence, respondent city requested the Retirement System to place each petitioner on disability retirement status. As indicated, each petitioner re-

---

[1]The individual accumulated sick-leave days are the following: Batters, 459½; Ponton, 499; Mitchell, 421½; Taylor, 243½; Hassinger, 470; and Morse, 323.

[2]That section provides, in pertinent part, that "[w]henever any city...fireman... who is a member of the Public Employees' Retirement System...is disabled, whether temporarily or permanently, by injury or illness *arising out of and in the course of his duties*, he shall become entitled...to leave of absence while so disabled without loss of salary in lieu of temporary disability payments, if any, which would be payable under this chapter, for the period of such disability but not exceeding one year, or until such earlier date as he is retired on permanent disability pension...." (Italics added.)

sisted placement on disability retirement status until such time as his accumulated sick leave days, with full compensation, had been exhausted.

Petitioners have also been members of a union (Santa Monica Fire Fighters, Local 1109, I.A.F.F.), which bargained on their behalf with respondent city and negotiated contracts of employment (referred to as a memorandum of understanding, MOU) for the years 1976-1977 and 1977-1978. Each memorandum contained a section which provided that, with respect to sick leave rights, the firemen would be subject to section 2104I of the Santa Monica Municipal Code.

That section generally provides for the accrual of sick leave benefits based upon the completion of certain stated periods of employment, i.e., one full day of sick leave for every month of service up to ten years, and thereafter, two full days per month. There is a limitation that not more than 130 full sick leave days may be substituted for working days with respect to one given illness.

Of particular relevance here, however, is the definition of sick leave set forth in section 2104I of the Santa Monica Municipal Code. It states that "[s]ick leave shall be defined as follows: 1. Absence from duty *because of illness or off-the-job injury*, or exposure to contagious diseases as evidenced by certification from an accepted medical authority; . . ." (Italics added.)

## II

### *The Contentions of the Respective Parties*

In support of their position in this matter, petitioners have relied on section 21025.2 of the Government Code, which provides, in part pertinent to the issue before us: "[T]he retirement of a member who has been granted or is entitled to sick leave . . . shall not become effective until the expiration of such sick leave with compensation . . ., unless the member applies for or consents to his retirement as of an earlier date. Sick leave shall be subject to the regular requirements of law and rules governing the use of sick leave."

It is respondent city's position that Government Code section 21025.2, as properly interpreted, did not authorize payment to petitioners for their accumulated sick leave days in view of the provisions of

section 2104I of the Santa Monica Municipal Code. The city contends that section 2104I of its code clearly intended to distinguish between work-related injury and illness (compensated by workers' compensation) and nonwork-related injury and illness, to which the sick leave benefits applied; that since petitioners had all sustained work-related injuries and illnesses which caused their disability retirements, they were not entitled to use and be paid for their accumulated sick leave. Instead, petitioners were only entitled to the benefits provided by the Labor Code for local safety officers who are permanently disabled.

It is petitioners' position here that, even if local law (the Santa Monica City Code) governs their situation rather than the state statute—Government Code section 21025.2—they are still entitled to recover accumulated sick leave pay since they are all suffering from *illnesses* which entitle them to use and be paid for their accumulated sick leave days before disability retirement can become effective.

### III

#### *The Trial Court's Findings and Conclusions*

The trial court, in its conclusions of law, rejected the premise that sick leave liability could be imposed on a charter city such as respondent City of Santa Monica by state legislative or administrative edict. The trial court concluded that respondent city had properly applied to the Retirement System for disability retirement for each petitioner under the provision that "[a]n employee who is incapacitated and has no reasonable expectation of recovering sufficiently to perform his duties should be retired for disability," and that, after such time, such an employee receives appropriately computed retirement benefits.

Noting that petitioners had not consented to being placed on retirement status, the trial court declared that, in any event, the appropriate retirement date for each petitioner would be the date when the Workers' Compensation Appeals Board declared each petitioner's disability permanent and stationary.

The trial court interpreted Government Code section 21025.2 as "not self-executing," and concluded that "to create any rights [to sick leave] there must be a grant or entitlement to sick leave pay under the provisions of the laws of the City of Santa Monica."

Adverting to section 2104I of the Santa Monica Municipal Code, the trial court also determined that it did *not* entitle petitioners to *sick leave* because the benefits available pursuant to that provision were only for an illness or an injury that was *not* work related. As a conclusion of law, the trial court set forth that "[i]n Santa Monica Petitioners were never entitled to sick leave pay. Sick pay (unlike Worker's Compensation) is a voluntary program resulting from employer-employee bargaining wherein non-work related diseases and injuries are partially and contingently compensated." As a consequence, petitioners were denied relief in the trial court.

## IV

### *The Meaning of the Phrase "entitled to sick leave" used in Government Code Section 21025.2*

Petitioners assert that Government Code section 21025.2 clearly mandates their entitlement to sick leave benefits without regard to local limitations or definitions of "entitled to sick leave." They find support in *Marsille* v. *City of Santa Ana* (1976) 64 Cal.App.3d 764 [134 Cal.Rptr. 743], which squarely held that, pursuant to Government Code section 21025.2, certain firemen who had sustained on-the-job injuries and were receiving benefits pursuant to Labor Code section 4850 were entitled to defer retirement until they had exhausted accumulated sick leave benefits. The *Marsille* court declared that because the City of Santa Ana had entered into a contract with the Retirement System, the state statutes (including Gov. Code, § 21025.2) "preempt City's municipal code in the area of retirement of City's employees." (*Marsille, supra*, 64 Cal.App.3d 764, 771.)

The basic issue under Government Code section 21025.2 is whether the employee, at the time of his disability retirement, is "entitled to sick leave." It is the fact that he is so entitled that triggers the operation of the section to provide him with the right to have his retirement date fixed at a time to permit collection from the employing agency of compensation for all accrued and unused sick leave time. The basic holding of *Marsille* was that the court would *not* look to the city's municipal code but to the state statute to determine whether firemen were *entitled to sick leave.*

The *Marsille* court stated that the words of Government Code section 21025.2—including the phrase "entitled to sick leave"—are to be construed "by their ordinary meaning." (*Id.* at p. 770.) Without too much discussion, the court concluded that the firemen who were suffering from disabilities that caused them to be eligible for disability retirement were suffering from illness that prevented them from working. Hence they were entitled to sick leave by reason of such illness at the time they were awarded disability retirement. The *Marsille* court thus resolved the dispute over sick leave in favor of the firemen.[3]

Two years later, the court that decided *Marsille*, decided *Patton v. Governing Board* (1978) 77 Cal.App.3d 495 [143 Cal.Rptr. 593].

In *Patton*, the court dealt with a bus driver employee of a school district who received a disability retirement under the Retirement System. The issue again was whether he was entitled to his unused, accumulated sick leave. In *Patton*, the employee requested sick leave from his employer. This was refused and the employee was terminated by the employer and the question was whether an entitlement to sick leave had become vested prior to the termination. The employer contended that, at the time the employee made his request for sick leave, he was not actually sick. The trial court made a factual finding that at the time of the employee's termination, which was five days subsequent to his application for sick leave, he was not sick or disabled nor was he sick or disabled at the time that he applied for his sick leave.

It is difficult to determine whether *Patton* accepted its former holding in *Marsille* that the issue under Government Code section 21025.2 of whether an employee at the time of his disability retirement was "entitled to sick leave" was to be decided by looking solely at section 21025.2 and not at the rules and regulations pertaining to sick leave enacted by the employer-agency. At one point the *Patton* court proceeded

---

[3]Although the *Marsille* court said it would not apply the City of Santa Ana's regulations in deciding whether the firemen were entitled to sick leave, nevertheless, the court discussed the city's definition of sick leave as it was set forth in Municipal Code sections 9-160 and 9-161. Section 9-160 provided that "[s]ick leave is construed to mean absence because of an illness that will prevent the employee from performing the duties of his position...," and section 9-161 of the Santa Ana Municipal Code established the circumstances under which an employee was entitled to use sick leave by providing "'[s]ick leave...shall be allowed only in case of necessity and actual sickness or *disability*.'" (*Marsille, supra,* 64 Cal.App.3d 764, 771-772.) It appears that *Marsille* was suggesting that it would have reached the same result if it had interpreted Government Code section 21025.2 to make the city's municipal code applicable.

to construe section 21025.2 as meaning that "a member [of the Retirement System] who is too sick to work at the time of such member's retirement, whether or not sick leave has already been granted, is entitled to the use of all accumulated sick leave before retirement becomes effective. Sickness for purposes of entitlement to sick leave is universally recognized as an illness or injury interfering with one's ability to perform one's usual work so that absence from work is warranted." (*Patton, supra*, 77 Cal.App.3d 495, 504.)

But the *Patton* court also concluded that entitlement to sick leave under Government Code section 21025.2 was a factual issue which required proof in accordance with the employer school district's rules, and, hence, that the findings of the trial court were controlling since they were supported by substantial evidence.

The *Patton* court sought to distinguish its prior decision of *Marsille* by stating that the facts in *Marsille* were different from those presented in *Patton*. The facts were different, said the court, because "[a]s we noted on page 771 of that opinion [*Marsille, supra*], the firemen there asserted they were entitled to sick leave because their industrial injuries, entitling them to disability retirement, fell within the city's definition of sick leave." (*Patton, supra*, 77 Cal.App.3d 495, 505.) Another difference between *Patton* and *Marsille*, said the *Patton* court, was in the fact that the applicable law of *Marsille* was found in Labor Code section 4850, which entitled a fireman, while disabled, to a leave of absence without loss of salary for a period not exceeding one year. That leave of absence was interpreted to mean a leave of absence due to illness and this period was considered to be unused sick leave. *Patton* concluded its distinction from *Marsille* by stating that the employee in *Patton*, being neither a fireman nor a law enforcement officer, was not within the scope of Labor Code section 4850; that he was not on leave of absence for an industrial injury; and was not too sick to work.

*Robertson* v. *City of Inglewood* (1978) 84 Cal.App.3d 400 [148 Cal.Rptr. 560], is also a case dealing with the sick leave retirement rights of a fireman employed by a city. The fireman-petitioner was a member of the Retirement System. The City of Inglewood's rules of employment and a corresponding memorandum of understanding governing firemen provided that the employee would accumulate sick leave at the rate of eight hours per month. The petitioner-fireman had accumulated 317 hours of unused sick leave when he was injured in the

course of his employment. As a result of his injury he was given a disability retirement and paid in cash an amount equivalent to one-half of his accrued sick leave. This payment was made pursuant to Inglewood's civil service rules which provided that, in the event of a retirement by an employee with unused sick leave to his credit, he was to be compensated in an amount equal to one-half of the value of such sick leave.

It is significant that Inglewood's civil service rules also provided that sick leave was allowable only for disability resulting from a "nonservice connected illness or injury." In *Robertson*, petitioner sought to have his date of retirement changed in order to be given credit for the entire amount of his accumulated sick leave and to be paid accordingly. The petitioner-fireman in *Robertson* made the contention that, under Government Code section 21025.2, he was "entitled to sick leave" at the time he was placed on disability retirement and, hence, had a right to the postponement of the effective date of his retirement until the expiration of all of his accumulated sick leave. This would have the effect of requiring Inglewood to pay him for his entire accumulated sick leave.

In denying the petitioner in *Robertson* the relief he requested, the court patterned its result upon the conclusion reached in the *Patton* case. The *Robertson* court reasoned that, under Inglewood's civil service rules, the petitioner-fireman was *not* "entitled to sick leave" on the date of his disability retirement, which produced the consequence that Government Code section 21025.2 was not applicable to require that his retirement be deferred until accumulated sick leave had been exhausted. The *Robertson* court concluded that since "the city's civil service rules provided for sick leave to firemen only for nonservice-connected injury or illness, Robertson was not entitled to be placed upon sick leave when he was retired." (*Robertson, supra*, 84 Cal. App.3d 400, 407.) In order to reach its result the *Robertson* court construed Government Code section 21025.2 to mean that the question of whether an employee was "entitled to sick leave" was to be determined under the employing agency's governing civil service rules. Under Inglewood's civil service rules, petitioner Robertson was ill from a *service-connected* injury—not a nonservice-connected injury—which made him ineligible for sick leave.

The *Robertson* court rejected the *Marsille* view that whether an employee was "entitled to sick leave" within the meaning of Government Code section 21025.2 was to be determined by the court's making its

own interpretation of this phrase as used in section 21025.2 without reference to the employer agency's rules or regulations defining the term. On the contrary, the *Robertson* court construed the phrase, "entitled to sick leave," used in Government Code section 21025.2, as referring to the employer agency's rules and regulations for the determination of whether, at the date of disability retirement, the employee was entitled to sick leave. This interpretation of Government Code section 21025.2 was reasonable and appropriate, said the *Robertson* court, by reason of the last sentence of section 21025.2 of the Government Code, which provided: "Sick leave shall be subject to the regular requirements of law and rules governing the use of sick leave."[4]

A case decided at approximately the same time as the *Robertson* case was *Campbell* v. *City of Monrovia* (1978) 84 Cal.App.3d 341 [148 Cal.Rptr. 679]. The *Campbell* case involved the sick leave retirement rights of a police officer employed by the City of Monrovia. As in *Robertson*, the police officer in Campbell had an accumulation of sick leave—approximately 87 days—when he was given a disability retirement as a result of a disability that arose out of his employment. He was not given any credit by Monrovia for his unexhausted accumulated sick leave and sought to obtain such credit by reliance upon Government Code section 21025.2. The trial court granted the petitioner-police officer the relief requested and the City of Monrovia appealed.

In affirming the trial court's judgment, the *Campbell* court held that the determination of whether an employee was entitled to sick leave under Government Code section 21025.2 could "only be properly understood by reference to the rules and regulations established by the member's employer which define the member's rights to sick leave benefits. If this were not so, then, because of the absence of sick leave

---

[4]In spite of the *Patton* court's statement that *Patton* was distinguishable from its earlier *Marsille* case, the *Robertson* court considered *Marsille* and *Patton* to be in conflict and observed that *Patton* had stated the better rule, "by holding that entitlement is a matter determined by the eligibility of the employee for sick leave at the time of his retirement *as provided in the civil service rules of the employing entity.*" (*Robertson, supra*, 84 Cal.App.3d 400, 406.) (Italics added.) In a case subsequent to *Patton, Willis* v. *City of Garden Grove* (1979) 93 Cal.App.3d 208 [155 Cal.Rptr. 493], decided by the same court which decided *Marsille* and *Patton*, it was said that the *Marsille* interpretation of Government Code section 21025.2 did not have to be abandoned in order for the *Willis* court to decide that Willis, a fireman for Garden Grove, upon his retirement for disability, could recover only 25 percent of his accumulated sick leave in spite of Government Code section 21025.2 because "the local rule of the City of Garden Grove delineated the scope of sick leave an employee could receive as a pay off on retirement,..." (*Willis, supra*, 93 Cal.App.3d 208, 214.)

benefits in state statutes, the necessary result would be no meaningful consideration of these rights could ever occur, as *these rights arise solely out of* and are determined by reference to *local laws, rules and regulations*." (*Campbell, supra,* 84 Cal. App.3d 341, 348-349.) (Italics in original.) The trial court's judgment in *Campbell* was affirmed on the basis that, under Monrovia's rules and regulations, the petitioner-police officer was qualified for sick leave at the time of his retirement for disability.

■ We conclude that the interpretation of the phrase, "entitled to sick leave," contained in Government Code section 21025.2, made by *Patton, Robertson* and *Campbell,* is correct and requires that we look to the rules and regulations of the employer agency for a determination of the employee's rights with respect to accumulated sick leave upon his disability retirement. We take note of the fact that in 1978, an amendment to Government Code section 21025.2 deleted the last sentence of the section[5] and substituted in its place the following: "[O]r unless, with respect to sick leave, the provisions of a local ordinance or resolution or the rules or regulations of the employer provide to the contrary."[6] We do not construe this amendment as producing any change in the interpretation to be given Government Code section 21025.2. The amendment simply clarifies what we hold to be the proper interpretation absent the amendment.

## V

*Were Petitioners Entitled to Sick Leave·
Under the Provisions of the Santa
Monica Municipal Code?*

We turn now to a consideration of section 2104I of the Santa Monica Municipal Code which governs the rights of petitioners to accumulated unused sick leave. In the relevant portion of subdivision 1 of section 2104I, sick leave is defined as follows: "Absence from duty because of illness or off-the-job injury." If at the time of disability retirement, petitioners were entitled to "sick leave" within the meaning of section 2104I, subdivision 1, they are entitled to payment from Santa Monica

---

[5]The deleted last sentence of Government Code section 21025.2 provided: "Sick leave shall be subject to the regular requirements of law and rules governing the use of sick leave."

[6](See Stats. 1978, ch. 646, § 1, p. 2105.)

for their accumulated unused sick leave under Government Code section 21025.2.

At the time of their disability retirements, each petitioner was unable to work as a result of a job-related illness or disability. Does a job-related illness or disability come within the definition of "sick leave" as being limited to "an absence from duty because of illness or off-the-job injury"? Petitioners contend that two separate categories are established by section 2104I, subdivision 1, of the Santa Monica Municipal Code by the use of the conjunctive "or" between "illness" and "off-the-job injury"; that entitlement to sick leave is conferred upon those that are "ill" as a result of both nonjob-related disabilities and job-related disabilities, *and* those that have suffered off-the-job injuries. It is further contended that the word "illness" must be construed by attributing to it its ordinary meaning, which would include petitioners' various disabilities, and that the phrase "off-the-job," by its placement in the phrase, describes "injury" but *not* "illness." Respondent city contends, and the trial court so found, that the framers of the section intended to delineate between *work-related* injuries and illnesses to be compensated by workers' compensation, and *off-the-job* injuries and illnesses—not work-related—to be compensated as "sick leave" under section 2104I.

It is our view that the appropriate interpretation of Santa Monica Municipal Code section 2104I, subdivision 1, limits entitlement to sick leave to illness, injury or disability—which is not job related—but suffered as an off-the-job illness or injury. We conclude that, by specifying illness or off-the-job injury, the drafters of the section intended to *omit* from the concept of sick leave those disabilities, whether the result of injury or illness, which were work-related and invoked eligibility for other kinds of benefits.[7] This construction of the section precludes the speculative inquiry of attempting to determine whether an injured knee constitutes an "illness," and if not, whether the same would be true of hypertension.

---

[7]Section 2104I of the Santa Monica Municipal Code was interpreted recently, in *Van Riessen* v. *City of Santa Monica* (1976) 63 Cal.App.3d 193 [133 Cal.Rptr. 618], wherein it was held that certain retiring firemen—not disabled—were not entitled to monetary payment by the city for accumulated unused sick leave days, because the governing section, 2104I, set forth certain criteria before entitlement to sick leave was established, and petitioners there, not being sick, had not met the requirements of the section. The case at bench, however, differs from *Van Riessen* because there is no dispute that petitioners here are permanently disabled from illness or injury, the crucial issue being that of determining whether petitioners' disabilities fall within the definition of those entitled to "sick leave" as that term is defined in section 2104I.

We hold, therefore, that the trial court correctly decided that local law governed petitioners' entitlement to sick leave benefits, and that, pursuant to local law, petitioners were not so entitled. In view of this conclusion, we do not reach the other contentions of the parties. Respondent city's request that we take judicial notice of certain material is hereby denied.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 27, 1980.