[No. G010124. Fourth Dist., Div. Three. Dec. 6, 1991.]

GEORGE F. MAHLER, Plaintiff and Appellant, v.
CITY OF BUENA PARK et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rule 976(b), part V of this opinion is not published, as it does not meet the standards for publication.

COUNSEL

Silver, Goldwasser & Shaeffer and Stephen H. Silver for Plaintiff and Appellant.

Filarsky & Wyatt and Steve A. Filarsky for Defendants and Appellants.

## OPINION

**SONENSHINE, J.**—The City of Buena Park (collectively, the City) and Kevin O'Rourke appeal from the grant of a petition for writ of mandate compelling the City to reinstate George F. Mahler to his position as fire captain. Additionally, Mahler was to receive full salary and all applicable benefits, and be allowed to defer his retirement until he exhausted all his accrued benefits as well as those benefits which would accumulate while exhausting those previously accrued.

Mahler appeals from that portion of the judgment denying him attorney fees.

I

Mahler, while employed by Buena Park as a fire captain, suffered an industrial injury which rendered him permanently unable to perform his job. Having accumulated over 4,000 hours of unused sick leave, he requested his retirement become effective upon exhaustion of these accrued benefits. The City, relying on Resolution No. 8413 (hereafter Resolution), section 4(K), offered instead to pay Mahler half the salary value of the accrued sick leave hours.

The trial court found that Mahler was entitled to exhaust his sick leave prior to his retirement, but denied his request for attorney fees.

## II

Government Code section 21025.2 provides in pertinent part, "Notwithstanding any other provision of this article, the retirement of a member who has been granted or is entitled to sick leave . . . shall not become effective until the expiration of such sick leave with compensation . . . unless the member applies for or consents to his [or her] retirement as of an earlier date, or unless . . . the provisions of a local ordinance or resolution or the rules or regulations of the employer provide to the contrary."

Mahler, as a member of the Public Employees' Retirement System (PERS), is entitled to exhaust his sick leave prior to retirement if (1) he has been granted or is entitled to sick leave, (2) he has not consented to retirement at an earlier date, and (3) local rules or the employer's rules do not provide to the contrary.[2] Because there is no dispute that Mahler has not consented to an earlier retirement, only the first and third conditions require examination.

## III

The City contends sick leave does not apply to industrial injuries except in limited circumstances. Whether sick leave may be used in conjunction with an industrial injury is determined by reference to the employer's rules and the definition of sickness provided by these rules. (*Patton* v. *Governing Board* (1978) 77 Cal.App.3d 495 [143 Cal.Rptr. 593]; *Campbell* v. *City of Monrovia* (1978) 84 Cal.App.3d 341 [148 Cal.Rptr. 679].[3])

Because the City's rules do not define sickness, a universal definition, such as "an illness or injury interfering with one's ability to perform one's usual work so that absence from work is warranted" is applied. (*Patton* v. *Governing Board, supra,* 77 Cal.App.3d at p. 504.) Mahler's industrial

---

[2] We reject the City's argument that its past practice of paying half salary value for accrued sick leave is determinative. The City cites no authority for this proposition. Moreover, prior employees may have chosen to utilize the half value buy-back provision in order to receive an immediate lump sum rather than wait for full salary payment over time. Alternatively, past retirees may have been unaware of all their options.

[3] "[T]he language of [Government Code] section 21025.2 relating to the retirement of a member 'who has been *granted* or is *entitled* to sick leave' can only be properly understood by reference to the rules and regulations established by the member's employer which define the member's rights to sick leave benefits." (*Id.* at p. 348.)

injury constitutes a sickness under this definition and thus warrants sick leave unless the City's provisions indicate otherwise.

Although the local rules contain no definition of sickness which excludes industrial injuries, the City argues the use of sick leave for industrial injuries is nevertheless limited by section 4(I)(3) of the Resolution, which states in part, "(3) *For Sickness Only*. Sick leave shall be used for sickness of the employee . . . ." The section continues, "An employee who continues to be disabled or ill after the employee has taken the maximum industrial accident leave provided in Paragraph X herein,[4] may use a proportionate amount of accumulated sick leave to supplement temporary disability indemnity so that the employee will receive the equivalent of full salary."

 The City contends sick leave benefits are available to an employee for an industrial accident only when the employee has exhausted his or her industrial accident leave, and then only to supplement temporary disability indemnity. The City is partially correct.

It is true that sick leave may be used where these circumstances exist, but these are not the only instances where an employee may use sick leave for an industrial injury. Sick leave is available for "the sickness of the employee." The portion of the Resolution relied upon by the City does not limit the right to use sick leave for an industrial injury, but simply complements it by allowing its use on a pro rata or partial basis when an employee is receiving temporary disability indemnity that is less than full salary.

This interpretation is reasonable and consistent with the full text of the Resolution.[5] It was designed to grant the employee his or her earned sick leave, limiting it only to avoid abuse. Where the employee uses multiple benefits, concurrently or consecutively, it is possible for the compensation

---

[4]Paragraph X provides in part, "Fire personnel, covered by Section 4850 of the California Labor Code, shall receive industrial accident leave according to the provisions of Section 4850 of the California Labor Code."

Labor Code section 4850 provides in pertinent part: "Whenever any city . . . firefighter . . . who is a member of the Public Employees' Retirement System . . . is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her duties, he or she shall become entitled . . . to leave of absence while so disabled without loss of salary in lieu of temporary disability payments . . . if any, which would be payable under this chapter, for the period of the disability, but not exceeding one year, or until such earlier date as he or she is retired on permanent disability pension . . . ."

[5]Pertinent portions of Resolution No. 8413(I) follow:

"3. *For Sickness Only*. Sick leave shall be used for sickness of the employee . . . .

" . . . . . . . . . . . . . . . . . . . . . . . . .

"An employee who continues to be disabled or ill after the employee has taken the maximum industrial accident leave provided in Paragraph X herein, may use a proportionate

received to be greater than the employee's normal salary. The disputed provision of the resolution serves to avoid this result by allowing a proportionate use of sick leave where the employee is utilizing multiple benefits. The resolution contains nothing which indicates any further limitation on the application of sick leave to industrial injury.

■ The City, in drafting the resolution, had the option and the opportunity to limit the use of sick leave as it saw fit. Had it wished to exclude industrial injuries from the definition of sickness, it could have done so. (See *Batters* v. *City of Santa Monica* (1980) 101 Cal.App.3d 595, 605 [161 Cal.Rptr. 728], sick leave defined as " '[a]bsence from duty because of illness or off-the-job injury . . . .' " and *Robertson* v. *City of Inglewood* (1978) 84 Cal.App.3d 400, 404 [148 Cal.Rptr. 560], sick leave allowed only for incapacitation by "nonservice-connected illness or injury . . . .") However, if the City chooses to limit employee benefits, it must do so clearly and unambiguously. (*Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336, 352 [71 Cal.Rptr. 135, 444 P.2d 711].) The City has failed to do so here. Because the City drafted the Resolution, the provisions of the Resolution must be construed against it. (*Victoria* v. *Superior Court* (1985) 40 Cal.3d 734, 738 [222 Cal.Rptr. 1, 710 P.2d 833].) Thus, Mahler is entitled to use his sick leave benefits in conjunction with his industrial injury.

## IV

■ The City argues section 4(K) of the Resolution precludes Mahler's exhaustion of his sick leave benefits prior to retirement. This provision reads, "Except as herein provided, no payment shall be granted to an employee for accrued sick leave at the time of termination.[6] *Termination of an employee's continuous service, except by reason of layoff for lack of work or funds, shall abrogate all sick leave accrued at the time of such termination,* regardless of whether the employee subsequently reenters the City service." (Italics added.)

The City first argues Mahler's incapacitation to perform his job constitutes "termination of continuous service." However, section 6(B) of the Resolution defines continuous service as "City Employment . . . without break or

---

amount of accumulated sick leave to supplement temporary disability indemnity so that the employee will receive the equivalent of full salary.

" . . . . . . . . . . . . . . . . . . .

"K. *SICK LEAVE PAY ON TERMINATION*. Except as herein provided, no payment shall be granted to an employee for accrued sick leave at the time of termination. Termination of an employee's continuous service, except by reason of layoff for lack of work or funds, shall abrogate all sick leave accrued at the time of such termination, regardless of whether the employee subsequently reenters the City service."

6"Except as herein provided" refers to the buy-back provision which allows the employee to sell his or her accrued sick leave upon disability retirement for "50% of the value of the unused sick leave based on the employee's rate of pay at the time of disability retirement."

interruption." The definition further provides "leaves of absence with pay for any period, shall not constitute an interruption of an employee's continuous service . . . ." Because Mahler is entitled to sick leave, which is a leave of absence with pay, he has not terminated continuous service.

The City also alludes to Mahler's termination from continuous service by virtue of his application for retirement. Although the date of Mahler's retirement is known, the retirement is still prospective. Mahler has not terminated continuous service simply because he has given notice of his retirement. "The fact that [the employee's] claim [for use of sick leave] was made at a date when [his employer] determined to retire him does not alter [his entitlement to benefits]." (*Throne* v. *City of Palos Verdes Estates* (1981) 120 Cal.App.3d 141, 143 [174 Cal.Rptr. 332].) The Resolution applies to accrued benefits "at the time of termination of an employee's continuous service." However, as to Mahler, this has not yet occurred.

V*

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Each party to bear its own costs.

Sills, P. J., and Wallin, J., concurred.

---

*See footnote, *ante*, page 705.